779 F.2d 861
 1986-1 Trade Cases 66,905, 4 Fed.R.Serv.3d 283
 Gene F. PALMIERI and Gene F. Palmieri, Inc., Plaintiffs,
DIC Concrete Corp., DIC Industries Co., DIC Construction
Corp., Underhill Construction Corp., Underhill Industries,
Inc., IIJ Enterprises, Inc., Big Apple Concrete Corp.,
Transit Mix Concrete Corp., Marine Pollution Services, Inc.,
d/b/a Certified Concrete Co., Cedar Park Concrete Corp.,
North Berry Concrete Corp., Julius Nasso Concrete Corp., S &
A Concrete Co., Inc., S & A Fireproofing Co., Inc., Joseph
DePaola, Walter Goldstein, Frank Phelan, Anthony Bertone,
Bernard Jereski, Joseph Vigliarolo, Frank Vigliarolo, Fred
DeMatteis, Gerald Wendel, Edward Halloran, Harold Madden,
Stanley Aronin, Pat Bruno, Ernest Patti, Julius Nasso,
Nicholas Auletta, and Charles Sapienza, Defendants- Appellants,
v.
The STATE OF NEW YORK, Intervenor-Appellee.
 No. 199, Docket 85-7479.
 United States Court of Appeals,
Second Circuit.
 Argued Aug. 29, 1985.
Decided Dec. 18, 1985.
 
 Frederic P. Hafetz, Goldman & Hafetz; Goldenbock and Barrell; Anderson, Laino & Urgenson, P.C.; LaRossa, Cooper, Axenfeld, Mitchell & Bergman; Bandler & Kass; Donald A. Hopper; Martin R. Rochlin, P.C.; Gustave H. Newman, P.C., New York City; Marcus Ollman & Kommer, New Rochelle, N.Y.; Weinstein & DeZorett, Garden City, N.Y.; and Sidney Leshin, New York City (of counsel), for defendants-appellants.
 Claude Trahan, Asst. Atty. Gen. (Robert Abrams, Atty. Gen.; Robert Hermann, Sol. Gen.; Lloyd Constantine, Asst. Atty. Gen., Chief, Antitrust Bureau; Alan Pfeffer, Asst. Atty. Gen., New York City, of counsel), for the intervenor-appellee.
 Before MANSFIELD, CARDAMONE and PIERCE, Circuit Judges.
 PIERCE, Circuit Judge:
 
 
 1
 Appeal from a final order of the United States District Court for the Southern District of New York, Thomas P. Griesa, Judge, entered June 10, 1985, granting motion of appellee New York State to intervene in a civil antitrust action between plaintiffs and defendants-appellants, and ordering that two sealing orders issued by a United States magistrate in the above action be modified so as to allow a state grand jury and the State Attorney General to have access to a settlement agreement and to hear testimony and otherwise obtain information regarding that agreement.
 
 
 2
 Appellants argue that the district court committed reversible error by stripping them of the protection of judicial sealing orders upon which they relied in reaching a settlement in their private antitrust action with plaintiffs.
 
 
 3
 The district court maintains that, notwithstanding such reliance, the state's ongoing investigation of possible antitrust violations in the ready-mix concrete industry in New York City is sufficiently important to allow a grand jury and the State Attorney General to have access to the settlement agreement.
 
 
 4
 We hold that, absent an express finding by the district court of improvidence in the magistrate's initial grant of the protective orders or of extraordinary circumstances or compelling need by the State for the information protected thereunder, it was error for the district court to modify the magistrate's orders.
 
 
 5
 We therefore reverse the order of the district court and remand for further proceedings consistent with this opinion.
 
 BACKGROUND
 
 6
 Appellants, corporations and individuals involved in the ready-mix concrete industry, were defendants in a private antitrust action, Palmieri v. DIC Concrete Corp. et al., 81 Civ. 6217 (S.D.N.Y.1982). The district judge assigned the matter to United States Magistrate Joel S. Tyler, Jr. to oversee pre-trial discovery. The plaintiffs, Gene F. Palmieri and Gene F. Palmieri, Inc., a concrete contractor incorporated and doing business in New York, alleged, inter alia, in an amended complaint filed on December 8, 1982, four antitrust counts arising from events in the ready-mix concrete industry in New York City during several preceding years. These alleged violations have also been the subject of an ongoing state criminal antitrust investigation since September 1982 or earlier, when the State Attorney General served subpoenas duces tecum upon several defendants, pursuant to N.Y.Gen.Bus.L. Secs. 340 et seq. (The Donnelly Act). Appellants concede that "[t]here is substantial overlap between the subject matter of the [state] investigation and the subject matter of the [private] action." Joint Aff. in Response to Motion to Intervene and Modify Sealing Order (81 Civ. 6217) p 8. Further, several of the appellants have unsuccessfully attempted in state court to terminate the state investigation and quash the grand jury's subpoenas.[1]
 
 
 7
 Beginning in 1983, the magistrate supervising pre-trial proceedings participated in settlement discussions with the attorneys for the parties to the private action, pursuant to the district court's instructions. The parties were concerned that any proceedings of record would be viewed with suspicion by the Attorney General, given that the Attorney General filed affidavits in State Supreme Court from November 1982 through March 1983, including one claim that a prior antitrust action between certain defendants in this action, Julius Nasso Concrete Corp. v. DIC Concrete Corp. et al., (No. 78 Civ. 2865) (S.D.N.Y.) had been settled under "unusual" and possibly unlawful circumstances. Jt.Aff., supra, paragraphs 8-10.
 
 
 8
 Accordingly, defendants moved for entry of a Protective Order, pursuant to Fed.R.Civ.P. 26(c), expressly providing that "all matters" related to discovery would not be "disclosed to any other person, including any government agency or instrumentality...." In granting this motion, the magistrate stated in his Order of December 23, 1983 that defendants "intend to furnish discovery in this action in reliance upon this Order...." The magistrate later sent two letters, in or about May and July 1984 respectively, to Assistant Attorneys General Gabriele and Trahan making clear that the express purpose of the order was to insulate proceedings from inquiry by the Attorney General. In or about February 1984, the Attorney General obtained a copy of plaintiff's deposition transcript that had been inadvertently filed unsealed. In response to this incident, the magistrate entered an Order dated April 19, 1984 directing that all discovery matters be delivered to his office so that he could personally insure that the Attorney General would not have access to them.
 
 The Two Sealing Orders At Issue
 
 9
 Concurrently, the magistrate urged the parties to consider settling the action. In response to their explicit express reservations due to the Attorney General's statements as to the Nasso settlement, the magistrate issued a sealing order, dated May 1, 1984, covering the entire record, including any settlement negotiations, which would be conducted under his supervision in a locked courtroom in the United States Courthouse in White Plains. After a settlement was reached, the magistrate entered a second sealing order on July 5, 1984, directing that the settlement be "sealed and shall not be disclosed by the parties, counsel or their representatives to anyone without further order of this Court...." That same month, in response to an earlier request by the Attorney General to learn the terms of the settlement, the magistrate wrote a letter to Assistant Attorney General Trahan denying that request and explaining that it would have been "difficult, if not impossible, to engage in meaningful discovery or settlement, which I urged to be entered into with my assistance ... without the long enduring protection requested and to which I agreed...." (A109-10) The magistrate directed the Attorney General to make any "formal application" for relief to the district court.
 
 
 10
 The State's Motion to Intervene and Subpoena of Palmieri
 
 
 11
 On October 25, 1985, the Attorney General filed a motion to intervene in this action and to modify the sealing orders. The motion's return date was originally December 18, 1984, but at defendants' request the Attorney General agreed to set the return for January 2, 1985. On December 17, 1984, the Attorney General served a grand jury subpoena ad testificandum upon plaintiff Palmieri, requiring an appearance on December 20, 1984.
 
 
 12
 Plaintiff Palmieri sought protective relief from Hon. Ernst H. Rosenberger in State Supreme Court on December 19, 1984. Justice Rosenberger enjoined the Attorney General from questioning Palmieri before the grand jury on the subject of the settlement until the district court had ruled on the Attorney General's motion to intervene and modify the sealing orders.
 
 
 13
 Following conferences on March 29, May 23 and May 28, 1985, Judge Griesa granted the Attorney General's motion to modify the sealing orders, thereby allowing disclosure of the settlement negotiations and terms to the grand jury, subject to a stay pending appeal.
 
 DISCUSSION
 
 14
 This case lies at the juncture of two competing imperatives in our judicial system: the need of a state grand jury to gather evidence for ongoing criminal investigations, and the need of our district courts and civil litigants to facilitate efficient resolution of disputes through negotiated settlements. The State of New York looks to the former imperative to lay claim to the products of the federal court proceedings herein; the appellants look to the latter imperative, and specifically to their reliance thereon throughout the federal proceedings, to preserve the secrecy of those products. Appellants do not contest, and we see no reason to question, the procedural right of the Attorney General to permissive intervention pursuant to Fed.R.Civ.P. 24(b). See Martindell v. International Tel & Tel. Corp., 594 F.2d 291, 294 (2d Cir.1979); Nuesse v. Camp, 385 F.2d 694 (D.C.Cir.1967). Therefore, we move immediately to the merits of the district court's modification of the sealing orders.
 
 
 15
 This court has previously held that, "absent a showing of improvidence in the grant of a Rule 26(c) protective order or some extraordinary circumstance or compelling need ... a witness should be entitled to rely upon the enforceability of a protective order against any third parties, including the Government, and that such an order should not be vacated or modified merely to accommodate the Government's desire to inspect protected testimony for possible use in a criminal investigation...." Martindell, supra at 296; see also GAF Corp. v. Eastman Kodak Co., 415 F.Supp. 129 (S.D.N.Y.1976); Zenith Radio Corp. v. Matsushita Electric Industrial Co., 1978-1 Trade Cases (CCH) p 62,019 (E.D.Pa.1978). Applying the Martindell test to the two sealing orders herein, we hold that the district court erred in not expressly ascertaining whether the state had met its burden of proof under that test.
 
 
 16
 We note first that the extent of appellants' reliance on Magistrate Tyler's sealing orders, though not fatal to the state's case, renders its burden heavier than it might otherwise be. Assuming the grant of the sealing order was not improvident, appellants' reliance thereon, as evidenced by their unwillingness to engage in settlement negotiations without the protections afforded, raises a presumption in favor of upholding those orders. See Federal Deposit Ins. Corp. v. Ernst & Ernst, 677 F.2d 230, 232 (2d Cir.1982) ("Once a confidentiality order has been entered and relied upon, it can only be modified if an 'extraordinary circumstance' or 'compelling need' warrants the requested modification."); Martindell, supra at 295 ("Unless a valid Rule 26(c) protective order is to be fully and fairly enforceable, witnesses relying upon such orders will be inhibited ... thus undermining a procedural system that has been successfully developed over the years...."). As appellants have argued, here the very papers and information that the Attorney General seeks apparently would not even have existed but for the sealing orders and the magistrate's personal assurances of confidentiality, upon which the appellants apparently relied in agreeing to enter closed-door settlement negotiations. Compare United States v. Davis, et al., 702 F.2d 418, 422 (2d Cir.1983) ("most crucially, there is no indication that [the deponent] agreed to testify only in reliance on the [informal] 'understanding'.").
 
 
 17
 Of course, appellants' reliance on the magistrate's orders would not insulate those orders from subsequent modification or vacating if the orders were improvidently granted ab initio. See Martindell, supra at 296. Although "[s]ecrecy of settlement terms ... is a well-established American litigation practice," In re Franklin Nat'l Bank Securities Litigation, 92 F.R.D. 468, 472 (E.D.N.Y.1981), aff'd sub nom. Federal Deposit Ins. Corp. v. Ernst & Ernst, 677 F.2d 230 (2d Cir.1982), and although the extent to which judicial records ought to be subject to public access may often be a question "best left to the sound discretion of the trial court," Nixon v. Warner Communications, Inc., 435 U.S. 589, 599, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1978), no amount of official encouragement and reliance thereon could substantiate an unquestioning adherence to an order improvidently granted. We cannot say on the basis of the record before us whether the magistrate's orders were improvidently granted. We are not persuaded by the state's argument that the federal district court should have restrained itself from exercising jurisdiction under the doctrine of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), if for no other reason than that the state court proceedings do not appear to have been sufficiently underway to justify the application of Younger. Here, however, the state claims that the settlement entered into following the sealing order was itself an act in furtherance of criminal conduct in violation of the antitrust laws. If, at the time he issued the sealing orders, the magistrate should have recognized that the settlement would likely further criminal activity, then he acted improvidently in granting those orders.
 
 
 18
 Upon reviewing the sealed agreement, the district judge concluded that he "saw nothing which would indicate in and of itself that the agreement was illegal," but left open the possibility that "the settlement agreement may fit into a broader picture in such a way that the Attorney General can appreciate but this court may not be able to fully appreciate." Palmieri v. DIC Concrete Corp., et al., 81 Civ. 6217 (Tr. May 28, 1985) at 24. The requisite inquiry, however, is not whether the materials at issue on their face would violate the antitrust laws. Such an inquiry could in many cases impose an unreasonable burden on the reviewing judge--though of course a finding of illegality could and likely would serve as a predicate for a finding of improvidence. Although Judge Griesa noted that it was his "view that the magistrate, while acting in good faith ... should not have entered sealing orders ..." id. at 23-24, his statement cannot be read as a proper finding of improvidence in the magistrate's actions. Rather, the requisite inquiry is whether the issuing official--here, the magistrate--reasonably should have recognized a substantial likelihood that the settlement would facilitate or further criminal activity. We discern no conclusion as to that inquiry in either the district judge's ruling from the bench or his subsequent order.
 
 
 19
 Nor does the fact that the magistrate granted the sealing orders, and the earlier protective order, specifically to preclude the Attorney General from learning the details about the subject proceedings, necessarily show that he acted improvidently. See, e.g., Martindell, 594 F.2d at 298 (Medina, J., concurring) (protective order that "expressly anticipated" and sought to prevent Government interest upheld).
 
 
 20
 The district court could alternatively predicate modification or vacation on a finding of "extraordinary circumstances" or "compelling need." FDIC, 677 F.2d at 232; Martindell, 594 F.2d at 296. Here again, the district judge's finding that he "cannot preclude" the possibility that the Attorney General could see a need for the documents where he (Judge Griesa) could not, Tr. May 28, 1985 at 24, is not dispositive of the question of whether the state has affirmatively demonstrated a compelling need for the subject matter of the sealing orders.
 
 
 21
 Indeed, the state has a special burden with respect to the materials that it seeks to unseal. As Judge John Minor Wisdom, sitting by designation in the Seventh Circuit, has noted, what was critical to Martindell and GAF was the fact that "the party seeking access ... was the federal government, which in each case had at its disposal special investigatory powers not available to private litigants...." Wilk v. American Medical Association, 635 F.2d 1295, 1299-1300 (7th Cir.1981). We note that the State of New York enjoys a similarly privileged position with respect to its investigatory powers. For example, it has the power to subpoena persons and documents before the grand jury, cf. Martindell, 594 F.2d at 298 (Medina, J., concurring), as evidenced by the subpoenas already served on members of the ready-mix concrete industry. Such powers, of course, do not foreclose the possibility that the State may have no reasonable alternative to the method of investigation that it seeks to employ here, but they do raise a rebuttable presumption against modification of the orders.
 
 
 22
 Again, we cannot say whether, on the record as presented, the state has shown a compelling need for the requested modification. If the district court has not found that the state has shown "improvidence" or "extraordinary circumstances" or "compelling need," then the state has not met its burden and the orders should not have been modified. We leave final determination, however, to the district court.
 
 
 23
 Reversed and remanded.
 
 
 
 [1]
 See Brief for Intervenor-Appellee at 3, citing LaRossa, Axenfeld & Mitchell v. Abrams, 62 N.Y.2d 583, 479 N.Y.S.2d 181, 468 N.E.2d 19 (1984); Big Apple Concrete Corp. v. Abrams, No. 82/27293 (Sup.Ct., N.Y.Co. June 9, 1983), rev'd in part, 103 A.D.2d 609, 481 N.Y.S.2d 335 (1st Dep't. 1984); In Re Subpoenas Served By The Attorney General dated May 9, 1984, Nos. 17865/84 and 19621/84 (Sup.Ct., N.Y.Co. Jan. 24, 1985); In Re Quadrozzi Equipment Leasing Corp., No. 19895/84 (Sup.Ct., N.Y.Co. Jan. 24, 1985); Scara-Mix, Inc. v. Abrams, No. 22743/84 (Sup.Ct., N.Y.Co. Feb. 6, 1985); Golenbock & Barrell v. Abrams, No. 27297/82 (Sup.Ct., N.Y.Co. April 23, 1984); In re Grand Jury Subpoena Duces Tecum Dated February 4, 1985 (Custodian of the Records v. Abrams), No. 6060/85 (Sup.Ct., N.Y.Co.Crim.Term, April 23, 1985); In re Grand Jury Subpoena Duces Tecum Dated February 4, 1985 (Sup.Ct., N.Y.Co.Crim.Term, June 10, 1985)