**ANDOVER DATA SERVICES, A DIVISION OF PLAYERS COMPUTER, INC., Plaintiff–Appellee,**

v.

**STATISTICAL TABULATING CORPORATION, Defendant.**

**Appeal of Walter B. SCHWER, Witness.**

**No. 672, Docket No. 88–7849.**

United States Court of Appeals, Second Circuit.

Argued Jan. 24, 1989.

Decided June 2, 1989.

Walter Klasson, New York City, for appellant.

John F. Byrne, New York City (Samuels & Grossman, New York City, of counsel), for plaintiff-appellee.

Jeremiah S. Gutman, New York City (Gail A. Wechsler, of counsel), for amicus curiae New York Civil Liberties Union Foundation.

Before NEWMAN, PIERCE and MAHONEY, Circuit Judges.

PIERCE, Circuit Judge:

The issue presented on this appeal is narrow and straightforward: May a district court compel the testimony of a nonparty witness in a civil action, notwithstanding the assertion of a valid fifth amendment claim, by issuing a Rule 26(c) protective order which purports to limit prosecutorial access to the compelled testimony? Because it is clear to us that the protections of a Rule 26(c) order are not co-extensive with those of the fifth amend-

ment, we conclude that this novel question must be answered in the negative.

## BACKGROUND

The essential facts relevant to this appeal are not in dispute. This is a diversity action in which plaintiff-appellee Andover Data Services ("Andover") seeks to recover for damages allegedly resulting from tortious interference with Andover's business relations by defendant Statistical Tabulating Corp. ("Statistical"). Prior to the events which led to the filing of this suit, Andover and Statistical were both engaged in the business of rendering data processing services to the commodities and related financial industries. Appellant Walter B. Schwer was the director of Andover's New York operations. While still employed by Andover, Schwer allegedly engaged in a course of conduct which led to the conversion of Andover's business, and Schwer allegedly interfered with Andover's contractual relations with its customers and with the potential purchaser of some of the company's assets. According to Andover, Schwer essentially conspired with defendant Statistical to "steal" Andover's business.

When Andover first discovered that its business had been expropriated by Statistical, Andover contacted the police and asked them to initiate a criminal investigation into the alleged activities of Schwer and Statistical. On June 1, 1987, Schwer was visited by police at his place of business and questioned about alleged violations of state law. On the advice of counsel, Schwer refused to answer any questions. As of this date, no formal charges have been filed against Schwer, and it is unknown whether there is currently a criminal investigation pending.

This appeal is the result of Andover's attempts to depose Schwer in connection with the civil action pending in the district court. Andover subpoenaed Schwer for the purpose of examining him before trial, and although Schwer attended the scheduled deposition, he refused to answer questions about his alleged involvement with Statistical on the ground that he might incriminate himself in violation of his fifth amendment rights. After Schwer refused to testify, Andover moved in the district court for an order compelling Schwer's testimony. In its moving papers, Andover asserted: (1) that Schwer's invocation of the privilege was a "mere subterfuge," because there was no immediate or foreseeable danger of criminal prosecution; (2) that even if Schwer's invocation of the privilege was valid, he waived his fifth amendment rights when he submitted an affidavit in earlier proceedings which purportedly discussed some of the events at issue here; and (3) that, in any event, an "appropriate protective order could be entered under the principles approved in *Martindell v. ITT*, 594 F.2d 291 (2d Cir.1979)," wherein this court spoke approvingly of the use of protective orders to encourage parties to testify *voluntarily* in civil cases, notwithstanding the existence of valid fifth amendment claims.

On June 15, 1988, after having received submissions from both Schwer and Andover, Judge Sprizzo heard oral arguments on Andover's motion to compel and on the validity of Schwer's fifth amendment claim. At the close of the hearing, the district judge concluded that Schwer's fear of criminal prosecution arising out of his alleged dealings with the defendant was not totally unfounded and found, in effect, that his fifth amendment claim was therefore valid. He also ruled that Schwer had not waived his fifth amendment rights by virtue of the content of an affidavit he had submitted in an earlier proceeding. However, since the district judge felt that there was a strong need for Schwer's testimony, he ordered Schwer to testify at a new deposition pursuant to a Rule 26(c) protective order which purportedly would protect Schwer's fifth amendment rights by limiting access to his deposition testimony and imposing non-disclosure obligations on all persons obtaining knowledge or possession of the testimony. In so ruling, the district judge conceded that using a protective order in this manner —*i.e.*, to *compel* the testimony of a witness who had legitimately invoked the fifth amendment—was unprecedented. The judge nevertheless felt that if he could effectively prevent the possible use against

Schwer of compelled testimony in a future criminal proceeding, then there would be no basis for invocation of the fifth amendment privilege, and the plaintiff would be able to benefit from this aspect of discovery in the litigation.

Notwithstanding the court's issuance of a protective order, Schwer again refused to testify, and the district court thereafter adjudged him to be in civil contempt of court and imposed coercive monetary sanctions. The district judge stayed enforcement of the contempt citation, however, pending appeal to this court. For the reasons stated below, we reverse the judgment of the district court and direct the court to vacate its prior protective order compelling this witness to testify.

### I.

■ The fifth amendment privilege against self-incrimination is one of our most fundamental rights as citizens. Moreover, because it is such an important right, the privilege against self-incrimination can be invoked in *any* proceeding where the witness "reasonably believes [that his testimony] could be used in a criminal prosecution or could lead to other evidence that might be so used." *Kastigar v. United States,* 406 U.S. 441, 444–45, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972). In keeping with its desire to safeguard fifth amendment rights, the Supreme Court has explicitly held that a district court cannot compel a witness in a civil action "to answer deposition questions over a valid assertion of his Fifth Amendment rights." *Pillsbury Co. v. Conboy,* 459 U.S. 248, 256–57, 103 S.Ct. 608, 614, 74 L.Ed.2d 430 (1983); *see National Life Ins. Co. v. Hartford Accident & Indem. Co.,* 615 F.2d 595, 597 (3d Cir.1980) ("It is undisputed that the fifth amendment privilege against self-incrimination may be asserted in a civil action as well as a criminal action.").

■ The right not to answer potentially incriminating questions in a civil or criminal proceeding, however, is not absolute. The prohibition against compelling the testimony of a witness in any setting is predicated upon there being a real danger that the testimony might be used against the witness in later criminal proceedings. As Justice Blackmun noted in his concurrence in *Pillsbury,* "[i]t is black-letter law that a witness cannot assert a Fifth Amendment privilege not to testify 'if the testimony sought cannot possibly be used as a basis for, or in aid of, a criminal prosecution against the witness.'" 459 U.S. at 273, 103 S.Ct. at 622 (quoting *Brown v. Walker,* 161 U.S. 591, 597, 16 S.Ct. 644, 647, 40 L.Ed. 819 (1896)).

■ Consistent with this basic principle, it has long been held that a grant of "use and derivative use" immunity by prosecutors pursuant to a federal (or state) immunity statute can be used to overcome the fifth amendment rights of a witness who refuses to testify. *Kastigar,* 406 U.S. at 445–48, 92 S.Ct. at 1656–57; *see also Pillsbury,* 459 U.S. at 257, 264, 103 S.Ct. at 614, 617. As the Supreme Court stated in *Kastigar,* "[i]mmunity statutes, which have historical roots deep in Anglo–American jurisprudence, are not incompatible with [the] values" underlying the fifth amendment privilege, 406 U.S. at 445–46, 92 S.Ct. at 1656–57, because such statutes effectively ensure that the compelled testimony "can in no way lead to the infliction of criminal penalties," *id.* at 461, 92 S.Ct. at 1665. A statutory grant of use immunity, then, can displace the privilege against self-incrimination because it leaves the witness who is compelled to testify in "substantially the same position" as if he had never testified in the first instance. *See Kastigar,* 406 U.S. at 458–59, 92 S.Ct. at 1663–64 (quoting *Murphy v. Waterfront Comm'n,* 378 U.S. 52, 79, 84 S.Ct. 1594, 1609, 12 L.Ed.2d 678 (1964)).

### II.

Given the purpose underlying the application of fifth amendment principles in the civil context (*i.e.,* to prevent the use of a deponent's testimony against him in subsequent criminal proceedings), the district judge herein reasoned that if a court could "foreclose [the] possibility" of future use of compelled testimony in a criminal prose-

cution, then "there [would be] no basis to permit anyone to take the Fifth Amendment in a civil case." Accordingly, the judge conceived the idea of using a Rule 26(c) protective order as a way of limiting prosecutorial access to testimony, thereby foreclosing the possibility of its future use in a criminal proceeding, and removing the need for the bar against compelled testimony in the first instance.

■ The district judge's novel approach to the dilemma confronting district courts when witnesses in civil cases invoke their fifth amendment rights not to answer potentially incriminating questions is, at first glance, not without certain appeal. On closer examination, however, it is clear that the fifth amendment's proscription of forced self-incrimination cannot be circumvented by the issuance of a Rule 26(c) protective order, and that the district court's ruling in this regard must be reversed.

In *Pillsbury v. Conboy,* the Supreme Court made it explicitly clear that district courts are precluded from "compelling testimony in a civil deposition over a valid assertion of the Fifth Amendment privilege, absent a specific assurance of immunity for such testimony." 459 U.S. at 264 n. 24, 103 S.Ct. at 617 n. 24. The reasoning behind the *Pillsbury* Court's decision is clear to this court. Only a grant of statutory immunity can be used to abridge the fundamental fifth amendment rights of the deponent because only its protections are sufficiently co-extensive with the scope of the fifth amendment privilege. *See Pillsbury,* 459 U.S. at 261–62, 103 S.Ct. at 616–17; *see also Kastigar,* 406 U.S. at 453, 458–59, 92 S.Ct. at 1661, 1663–64.

The *Pillsbury* decision standing alone, while not squarely on point, is sufficient to warrant a reversal of the district court's decision. As far as we can fathom, at no time has the Supreme Court ever accepted anything less than a duly-authorized grant of statutory use and derivative use immunity as a substitute for the protections of the fifth amendment in cases where potentially incriminating testimony is sought to be compelled from a witness. We add, however, that even were we to accept the district court's hypothesis that the dictates of the fifth amendment could be satisfied so long as something akin to a specific grant of immunity was in place, as a practical matter it is clear that the protections afforded by a Rule 26(c) order are *not* as extensive as those afforded by the fifth amendment, or by a statutory grant of use immunity, and that a protective order therefore cannot be used to abridge a witness' fifth amendment rights.

A Rule 26(c) protective order, no matter how broad its reach, provides no guarantee that compelled testimony will not somehow find its way into the government's hands for use in a subsequent criminal prosecution. It is well-settled here and elsewhere, for instance, that a Rule 26(c) protective order may be overturned or modified based on a finding of improvidence, extraordinary circumstances or compelling need. *See, e.g., Minpeco S.A. v. ContiCommodity Servs. Inc.,* 832 F.2d 739, 742 (2d Cir.1987); *Palmieri v. New York,* 779 F.2d 861, 866 (2d Cir.1985); *Martindell v. International Tel. & Tel. Corp.,* 594 F.2d 291, 296 (2d Cir.1979). In *In re Grand Jury Subpoena,* 836 F.2d 1468 (4th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 2914, 101 L.Ed.2d 945 (1988), for example, the Fourth Circuit held that a grand jury subpoena issued in a subsequent criminal investigation overrode a protective order previously issued in a civil proceeding, even though that order was specifically issued to protect fifth amendment rights. 836 F.2d at 1471. Finally, as a further practical consideration, it is unrealistic to believe that deposition testimony which is concededly critical to this plaintiff's case will remain effectively "under seal" for the duration of the trial and post-trial proceedings. *See* Heidt, *The Conjurer's Circle—The Fifth Amendment Privilege in Civil Cases,* 91 Yale L.J. 1062, 1095–96 (1982).

In light of the reality that the district court's order herein could very possibly be overturned or modified by another court in a subsequent proceeding, and given that it is highly unlikely that all proceedings in this case could remain sufficiently closed to

prevent inadvertent disclosure or leakage, we are drawn inescapably to the conclusion that a court in a civil action is simply without the means to fashion a sufficiently durable safeguard for the full protection of the fifth amendment rights of a reluctant non-party witness such as appellant. *See* 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2018, at 153 (1970) ("whether the court, in a civil action, can provide protection equivalent to an immunity statute, as is needed if the claim of privilege is to be overcome, seems doubtful").

Since the protections of a Rule 26(c) order simply are not as "certain" as the protections of either the fifth amendment or a statutory grant of use immunity, *see Pillsbury,* 459 U.S. at 257, 103 S.Ct. at 614, we hold that a non-consenting witness may not be forced to answer potentially incriminating questions in reliance upon such an order, no matter how carefully crafted the order may be. *See In re Grand Jury Subpoena,* 836 F.2d at 1478 ("Uncertainty about the ultimate outcome of a protective order will mean that no deponent may always effectively rely on a protective order to secure his right against self-incrimination."). Accordingly, we reverse the decision of the district court and direct that the order compelling Schwer to testify at any deposition in connection with this case be vacated. *See id.* at 1471 ("Absent a grant of immunity, the deponents were entitled, with or without a protective order, to assert their fifth amendment privilege in answer to potentially incriminating questions in a civil proceeding.").

## III.

Our holding that Rule 26(c) protective orders cannot be used to compel the testimony of witnesses who otherwise would be entitled to invoke the fifth amendment privilege is based primarily on the absence of a grant of statutory immunity herein, and, additionally, upon the fundamental inadequacy of protective orders as safeguards of fifth amendment rights. *See* Heidt, *supra,* at 1095. We wish to note further, however, that the district court's use of a Rule 26(c) protective order in this manner also raises serious separation of powers issues.

It is well-established that a trial court generally has no authority to grant immunity to a witness, and that the power to grant such immunity lies solely within the discretion of the Executive branch. *See Pillsbury,* 459 U.S. at 261, 103 S.Ct. at 616; *In re Corrugated Container Antitrust Litigation,* 644 F.2d 70, 78 n. 13 (2d Cir. 1981); *In re Daley,* 549 F.2d 469, 479 (7th Cir.), *cert. denied,* 434 U.S. 829, 98 S.Ct. 110, 54 L.Ed.2d 89 (1977); *United States v. Bonanno Organized Crime Family,* 683 F.Supp. 1411, 1451 (E.D.N.Y.1988). If the protective order in this case were to be given the "paramount effect" contemplated by the district judge herein, we fail to see how one could distinguish between such an order and the type of statutory use immunity that prosecutors are authorized to confer. In the absence of any meaningful distinction between the two, this new breed of "protective order" might very well amount to an impermissible "de facto" grant of immunity, *see In re Grand Jury Subpoena,* 836 F.2d at 1475, which this court would be obligated to disavow. For the reasons stated above, however, we need not reach this issue on this appeal.

Finally, we also note that our holding today is in no way intended to abrogate the *Martindell* line of cases, wherein we have upheld the use of protective orders limiting disclosure of potentially incriminating testimony where parties have *voluntarily* consented to testify in civil cases in reliance upon such protective orders. *See, e.g., Minpeco,* 832 F.2d at 742–43; *Palmieri,* 779 F.2d at 864–66. In the instant case, Schwer has not consented to answer potentially incriminating deposition questions. To the contrary, he has vigorously defended his right not to be compelled to do so. Schwer therefore must be allowed to invoke the fifth amendment privilege and rely on silence, rather than on the protective order, to safeguard his fifth amendment rights.

## CONCLUSION

The order holding appellant in contempt is reversed, and we direct the district court

to vacate its order requiring appellant to testify at a deposition notwithstanding his invocation of the fifth amendment.