**In re GRAND JURY SUBPOENA
DUCES TECUM DATED
APRIL 19, 1991.**

**UNITED STATES of America, Appellee,**

v.

**John DOE, Esq., Appellant,**

**Continental Holdings, Inc., and
Continental Airlines, Inc.,
Intervenors–Appellants.**

Nos. 331, 332, Dockets 91–5047, 91–5049.

United States Court of Appeals,
Second Circuit.

Argued Aug. 28, 1991.

Decided Sept. 30, 1991.

James vanR. Springer, Washington, D.C. (Dickstein, Shapiro & Morin, David I. Shapiro, R. Bruce Holcomb, of counsel), for appellant.

Lawrence S. Bader, New York City (Morvillo, Abramowitz, Grand, Iason & Silberberg, Paul R. Grand, Jeffrey Plotkin, of counsel), for intervenors-appellants.

Jeffrey Toobin, Brooklyn, N.Y., Asst. U.S. Atty., E.D.N.Y. (Andrew J. Maloney, U.S. Atty., E.D.N.Y., Matthew E. Fishbein, Asst. U.S. Atty., of counsel), for appellee.

Before FEINBERG and CARDAMONE, Circuit Judges.

FEINBERG, Circuit Judge:

This case concerns a conflict between a bankruptcy court's protective order and a later-issued federal grand jury subpoena. The order was obtained in 1989 by David I. Shapiro,[1] the court-appointed examiner in the Eastern Air Lines, Inc. (Eastern) bankruptcy proceeding. Intervenors Continental Holdings, Inc. (formerly Texas Air Corporation) and Continental Airlines, Inc., appeal from an order of the United States District Court for the Eastern District of New York, Edward R. Korman, J., dated June 13, 1991, denying Shapiro's motion to quash a grand jury subpoena duces tecum served on him. The subpoena sought production of depositions obtained by Shapiro in connection with the bankruptcy proceeding and pursuant to the 1989 protective order. Shapiro appeals from another district court order, dated June 26, 1991, holding him in civil contempt for refusing to comply with the subpoena. For the reasons stated below, we vacate the orders of the district court and remand the case for further proceedings.[2]

## Background

In March 1989, Eastern filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York. At the time, Eastern was involved in a labor dispute with various striking unions. Shortly after the petition was filed, Chief Bankruptcy Judge Burton R. Lifland denied without prejudice a motion for appointment of a trustee to replace Eastern's management. Judge Lifland de-termined, however, that an examiner should be appointed to investigate and review allegedly fraudulent pre-Chapter 11 transactions involving Eastern, its affiliate corporation Continental Airlines and their then-mutual parent Texas Air Corporation, and to consider whether a trustee should be appointed to manage Eastern's affairs. In April 1989, the United States Trustee appointed Shapiro as examiner.

According to the record before us, counsel for Eastern, Texas Air and Continental Airlines told Shapiro that they would not voluntarily produce documents or witnesses unless the information obtained would be kept confidential and used only in the bankruptcy proceeding. We are informed that the striking unions and Eastern's management were in a bitter dispute over the pre-petition transactions, which were already the subject of litigation, and that the examiner's investigation would have been seriously delayed had the bankruptcy court not approved the assurance of confidentiality. We are also told that all parties to the bankruptcy proceeding, including the unions, and the bankruptcy judge felt that time was of the essence, and that Eastern was a wasting asset. In addition, according to the record, Shapiro was under enormous pressure to expedite his investigation in the interests of creditors who were owed billions of dollars, the traveling public and thousands of Eastern employees whose jobs depended on a prompt reorganization.

Accordingly, the United States Trustee, the examiner, and the respective counsel for Eastern, various unions and the creditors' committee signed a stipulation to keep confidential the information obtained during the depositions taken by the examiner. Pursuant to Bankruptcy Rule 9018, Judge Lifland signed an order dated May 3, 1989, placing under seal the matters referred to in the stipulation and stating that the order was "in the best interests of the Debtor's estate and the requirements of justice

---

1. Shapiro is John Doe, Esq., named in the caption. The seal on papers filed in this court in connection with this appeal is lifted to the limited extent required by publication of this opinion.

2. After this case appeared on the appellate calendar, the third member of the panel recused himself. We are deciding the case with only two panel members, pursuant to Second Circuit Local Rule § 0.14.

...." Other stipulations and protective orders were signed but they are not at issue on this appeal.

Shapiro took testimony from over 100 witnesses, who were either third parties or employees or officers of Eastern, Continental Airlines or Texas Air. None of these witnesses were parties to the stipulation. Upon completing his investigation, Shapiro submitted a lengthy report to the bankruptcy court on March 1, 1990 detailing his findings. The report was made available to the public. In addition, Shapiro released to the press on the same date a brief summary of his report. In his report, Shapiro found sufficient merit to warrant assertion of various civil claims on behalf of Eastern under a theory of breach of fiduciary duty or a theory of constructive fraud on creditors. The report did not draw conclusions as to whether any of the questioned transactions were made with actual intent to defraud creditors, or whether any conduct was criminal. Eastern has since ceased airline operations but the bankruptcy case is not yet concluded.

In April 1991, the United States Attorney for the Eastern District of New York obtained a grand jury subpoena duces tecum, commanding Shapiro to produce all deposition transcripts and all non-privileged documents obtained in connection with the Eastern bankruptcy. Shapiro moved in the district court to quash the subpoena. The United States Attorney also served grand jury subpoenas upon Continental Holdings and Continental Airlines (collectively hereafter Continental), requesting substantially the same depositions. Continental moved to intervene in Shapiro's motion and to quash the subpoena served upon Shapiro.

Judge Korman granted Continental's motion to intervene but denied the motions to quash. Thereafter, he held Shapiro in civil contempt for failure to comply with the order to produce but stayed the imposition of any sanctions pending this appeal. We are informed that Continental has since produced the documents requested in the subpoenas and that Shapiro has agreed to produce the remaining documents at issue, which were obtained from third parties, after he discovered that these documents were not specifically covered by a protective order. Therefore, the only issue before us is the production of the deposition transcripts.

In refusing to quash the subpoena, the district judge construed the bankruptcy court's protective order as an express agreement to withhold from the United States Attorney any evidence of fraud that the examiner uncovered. The judge then held that the protective order thus construed was contrary to the public policy against agreements to conceal information regarding commission of a crime. In addition, the judge found that the sealing order exceeded the power of the bankruptcy court because it conflicted with the congressional judgment that the decision to immunize testimony must be made by the Attorney General. The judge also held that Shapiro had the burden of demonstrating why the subpoena should be quashed, and that he had not met this burden. Finally, the judge noted that no evidence was introduced that witnesses relied on the sealing order before they gave their testimony.

## Discussion

A number of cases in this circuit have ruled on the enforceability of protective orders when a third party seeks access to the sealed material. In *Martindell v. International Telephone & Telegraph Corp.*, 594 F.2d 291 (2d Cir.1979), the government sought a court order granting it access to the transcripts of pretrial depositions taken in a civil action to which it was not a party. The depositions had been "taken pursuant to a court-appointed stipulation ... that the depositions should be treated as confidential and used solely by the parties for prosecution or defense of the action." *Id.* at 292. The action was a stockholders' derivative suit on behalf of International Telephone & Telegraph Corporation (ITT) against certain ITT officers and directors, charging them with waste of ITT assets through expenditures to influence 1970 elections in Chile. The government wanted to use the transcripts in its investigation

into possible violations of federal criminal law in connection with the same activity.

The district court denied the government access to the transcripts, and this court affirmed in an opinion by Judge Mansfield, joined by Judge Meskill. The panel balanced the interest of the government in obtaining depositions for law enforcement purposes against the interest in securing " 'the just, speedy, and inexpensive determination' of civil disputes ... by encouraging full disclosure of all evidence that might conceivably be relevant," *id.* at 295. In assessing the government's interest, the court pointed out that the government already has "awesome powers" such as subpoenaing a witness to testify before a grand jury, which "render unnecessary its exploitation of the fruits of private litigation." *Id.* at 296. The court held that absent a showing of improvidence in the grant of a protective order or some extraordinary circumstance or compelling need, a protective order is enforceable against any third party, including the government. *Id.* The third member of the panel, Judge Medina, concurred in the result and took even a stronger position for enforcing the protective order. Although *Martindell* involved a protective order issued under Rule 26(c), Fed.R.Civ.P., and the protective order here was issued under Bankruptcy Rule 9018, Rule 26 is applicable to adversary proceedings in bankruptcy cases. See Collier on Bankruptcy ¶ 9018.04 (1990).

We followed *Martindell* in *Palmieri v. State of New York*, 779 F.2d 861 (2d Cir. 1985). In that case, in an opinion by Judge Pierce joined by Judges Mansfield and Cardamone, we reversed a district court's grant of a motion by the state attorney general to modify a protective order for the purpose of allowing a state grand jury to obtain access to certain sealed information. The *Palmieri* court remanded for fact-finding pursuant to the *Martindell* test, holding that "the district court erred in not expressly ascertaining whether the *state* had met its burden of proof under that

test." *Palmieri*, 779 F.2d at 864 (emphasis added). We followed *Martindell* even more recently in *Minpeco S.A. v. Conti-Commodity Services, Inc.*, 832 F.2d 739 (2d Cir.1987), in an opinion by Judge Pratt joined by Judge Mahoney and a visiting judge.

■ These very recent decisions make clear that we must remand this case for further proceedings. The district court here apparently made no finding on whether the protective order was improvidently granted or whether the government had made a showing of exceptional circumstances or compelling need.[3] Instead, the district court erroneously placed the burden on the examiner to show why the subpoena should have been quashed rather than placing the burden on the government to show why the protective order should be overturned.

■ In its brief to us, the government argued that *Palmieri* does not control because it did not involve a grand jury subpoena. However, *Palmieri* did involve a motion to modify a protective order for the purpose of allowing a state grand jury access to sealed information. We find the government's attempt to distinguish *Palmieri* without merit.

The government relies primarily on a split decision of the Fourth Circuit, *In re Grand Jury Subpoena*, 836 F.2d 1468 (4th Cir.), cert. denied, 487 U.S. 1240, 108 S.Ct. 2914, 101 L.Ed.2d 945 (1988), which reasoned that quashing a grand jury subpoena because of a protective order would have the effect of giving "civil deponents *de facto* grants of immunity in the guise of Rule 26 protective orders." 836 F.2d at 1475. The government argues that the protective order at issue here improperly granted such immunity to the deponents. The *Martindell* test, however, does not transform a protective order into a grant of immunity because the test allows a protective order to be overcome by a showing of improvidence in the grant of the order,

---

**3.** Shapiro argues that the government cannot meet its burden of showing the need for the deposition testimony of witnesses, whose identi-

ty is known to the government, until it has at least called the witnesses before the grand jury.

extraordinary circumstances or compelling need. Indeed, we have specifically held that a Rule 26(c) protective order cannot be used to grant immunity to a witness and noted that this holding "is in no way intended to abrogate the *Martindell* line of cases, wherein we have upheld the use of protective orders limiting disclosure of potentially incriminating testimony where parties have *voluntarily* consented to testify in civil cases in reliance upon such protective orders." *Andover Data Services v. Statistical Tabulating Corp.*, 876 F.2d 1080, 1084 (2d Cir.1989) (emphasis in original). We decline "to depart from this well-travelled road," *Minpeco*, 832 F.2d at 743, and respectfully decline to follow the Fourth Circuit's apparent per se rule that a grand jury subpoena will always be enforced despite the existence of an otherwise valid protective order.

The government also relies on *United States v. Davis*, 702 F.2d 418 (2d Cir.), cert. denied, 463 U.S. 1215, 103 S.Ct. 3554, 77 L.Ed.2d 1400 (1983), which enforced a grand jury subpoena that requested the transcript of a deposition obtained during a bankruptcy proceeding. But, as we pointed out in "easily" resolving the issue posed by the conflicting interests, 702 F.2d at 422, in *Davis* there was no written stipulation of confidentiality, no formal protective order and no "indication" that the witness testified in reliance on an assurance of confidentiality. In this case, there is a protective order. We see no reason on the record before us not to presume, as we have in the past, that a witness relied on it, see, e.g., *Minpeco*, 832 F.2d at 743.

■ The government claims that the public release of Shapiro's report, which quotes from the deposition transcripts, and the release of the summary of the report waived the confidentiality conferred by the protective order. We disagree. Shapiro's report and summary contained only a portion of the material that was in the depositions and therefore the entire deposition transcripts cannot be said to have been made public. More importantly, we do not see how the examiner could waive the confidentiality rights of the witnesses who testified unless he had authority to act on their behalf. Such authority does not appear in the record before us.

■ As already indicated, the district court stated that "it is helpful to construe the [protective order] for the sake of this argument" as an agreement to withhold from the United States Attorney any evidence of fraud that the examiner uncovered. The judge then concluded that the order therefore violated the public policy against agreements to conceal information relevant to the commission of a crime. We disagree with this construction of the protective order. Moreover, the district court's approach would logically require the nullification of every protective order because all protective orders may conceivably result in the withholding of evidence from the government. Furthermore, in *Palmieri*, we noted that "the fact that the magistrate granted the sealing orders ... specifically to preclude the Attorney General from learning the details about the subject proceedings [does not] necessarily show that he acted improvidently." 779 F.2d at 866.

■ Finally, Shapiro argues that the government should have moved to modify the protective order in the bankruptcy court, which issued the order, rather than simply obtain a grand jury subpoena. We have already stated that in attempting to overturn a protective order, "[t]he proper procedure ... [i]s either to subpoena the deposition transcripts for use in a pending proceeding such as a grand jury investigation or trial, in which the issue could be raised by motion to quash or modify the subpoena ... or to seek permissive intervention in the private action ...." *Martindell*, 594 F.2d at 294. We therefore hold that the government is not *required* to proceed before the court that granted the protective order in the civil action and placed documents under seal (the sealing court), but may proceed by grand jury subpoena followed by whatever steps may be appropriate to that procedure. If the latter procedure is followed and a motion to quash the subpoena comes before a court that did not issue the protective order, that

court might well consider staying its ruling to allow the parties to ask the sealing court to modify the protective order. The sealing court is obviously best situated to evaluate the original need for the order and the ramifications of changing it.

For the reasons given above, we remand for fact-finding and balancing consistent with *Martindell* with the burden on the government to show improvidence in the original grant of the protective order or compelling need or extraordinary circumstances that would justify allowing the government access to the depositions.

The orders appealed from are vacated and the case is remanded for further proceedings consistent with this opinion.