Kelvin DANIELS; Poseidon Baskin; Djibril Toure; Hector Rivera; Raymond Ramirez; Kahil Shkymba; Bryan Stair; Tiara Bonnner; Theron McConneyhead; and Horace Rogers, individually and on behalf of a class of all others similarly situated, Plaintiffs,

v.

THE CITY OF NEW YORK; and Mayor Rudolph Giuliani; New York City Police Commissioner Howard Safir; New York City Police Officers John Does ## 1–500; New York City Police Officer Anthony Curtin; New York City Police Sergeant Peter Mante; and New York City Police Officer Walter Doyle; in their individual and official capacities, Defendants.

No. 99 CIV 1695 (SAS).

United States District Court, S.D. New York.

April 12, 2001.

Adam D. Gale, Jennifer R. Cowan, Devevoise & Plimpton, Nancy Chang, William H. Goodman, Center for Constitutional Rights, Jonathan C. Moore, Law Offices of Jonathan C. Moore, Robert F. Van Lierop, Van Lierop, Burns & Bassett, New York City, for Plaintiffs.

Daniel S. Connolly, Ingrid Box, Heidi Grossman, Assistant Corporation Counsel, Corporation Counsel for the City of New York, New York City, for City of New York.

Neil M. Corwin, Sara L. Shudofsky, Assistant United States Attorneys, New York City, for Government Intervenors.

Peter Blessinger, Cerrone & Geoghan, New York City, for Mante & Doyle.

*OPINION AND ORDER*

SCHEINDLIN, District Judge.

## I. INTRODUCTION

Plaintiffs have brought a class action lawsuit seeking relief for alleged constitutional violations by a unit of the New York City Police Department ("NYPD") known as the Street Crime Unit (the "SCU").[1] It is alleged that in high crime areas, SCU officers have conducted suspicionless stops and frisks, relying on impermissible considerations of race and/or national origin rather than the "reasonable articulable suspicion" required by Fourth Amendment jurisprudence. The victims of such racial and/or national origin profiling are principally Black and Latino males. *See id.*

The United States (the "Government") seeks to intervene in this action, pursuant to Federal Rule of Civil Procedure 24(b), for the limited purpose of modifying a protective order issued by this Court on January 31, 2000.[2] The Government seeks this modification in order to gain access to the discovery material that has been or will be produced by the defendants in this action (collectively the "City"). Access to such discovery would assist the Government in its ongoing investigation of the NYPD, which began in March of 1999. For the following reasons, the Government's motion to intervene for the purpose of modifying the protective order is denied.

---

1. The SCU is an elite squad of police officers whose self-proclaimed mission is to interdict violent crime in New York City and, in particular, remove illegal firearms from the streets. *See* Third Amended Class Action Complaint for Declaratory and Injunctive Relief and Individual Damages ¶ 43.

2. The Protective Order defines "confidential materials" to include the UF–250 database; weekly SCU Tactical Deployment reports; any documents that the parties agree are confidential; and any documents that this Court directs to be produced subject to the Order.

## II. BACKGROUND

Following the shooting death of Amadou Diallo, the Government began an investigation into the stop and frisk practices of the NYPD. *See* Declaration of Sara L. Shudofsky, Assistant United States Attorney ("Shudofsky Decl."), ¶ 2. This investigation was brought pursuant to two statutes: the non-discrimination provision of the Omnibus Crime Control and Safe Streets Act of 1968, as amended, 42 U.S.C. § 3789d(c); and section 14141 of the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141 ("section 14141"). *See id.* Prior to instituting an action, the Government has no statutory authority to compel the City to provide it with any information.[3] *See* Memorandum of Law in Support of Government's Motion to Intervene for Modification of the Protective Order ("Gov't Mem.") at 2, 3. The City, however, has voluntarily provided the Government with UF–250 data from 1994 through the first four months of 1999.[4] *See id.* at 3. The City ceased its voluntary cooperation in the Fall of 2000 and has not provided the Government with the UF–250 database for the remainder of 1999 or for 2000. *See id.* The Government seeks access to this information, as well as other discovery currently shielded from disclosure under the terms of the protective order including SCU demographic information, disciplinary information, SCU tactical deployment plans, and internal memoranda.[5] *See id.* at 5–6.

## III. DISCUSSION

 Where the federal government seeks to modify a protective order in a private suit, the proper procedure is to seek permissive intervention under Rule 24(b). *See Martindell v. International Tel. & Tel. Corp.*, 594 F.2d 291, 294 (2d Cir.1979). Permissive intervention is discretionary with the trial court, *see H.L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir.1986), as that court must "consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Fed.R.Civ.P. 24(b).

 The decision to modify a protective order is one committed to the sound discretion of the trial court. *See In re Agent Orange Prod. Liab. Litig.*, 821 F.2d 139, 147 (2d Cir.1987). In making this determination, this Court must first determine what standard to apply to the Government's request.

### A. The Proper Standard

 Courts generally apply one of three standards when faced with a request to modify a protective order. The *Martindell* standard is generally applicable when a government agency seeks modification of a protective order governing discovery in a civil action. *See Martindell*, 594 F.2d at 296. Under this standard, the burden is on the Government to show "some extraordinary circumstance or compelling need" justifying modification of the protective order. *Id.* When a private party asserts a public interest in order to gain access to information, the burden is on the party seeking to maintain the confidentiality order to show that there is "good cause" for continued confidentiality. *See In re Agent Orange Prod. Liab. Litig.*, 104 F.R.D. 559, 567–68 (E.D.N.Y. 1985), *aff'd on different grounds*, 821 F.2d 139 (2d Cir.1987). Finally, when a private party seeks access to confidential information concerning a private matter, a court should consider the following factors: (1) good cause (for either modification or continued confidentiality); (2) the nature of the protective order; (3) the foreseeability at the time of the original protective order of the modification now requested; and (4) the parties' reliance on the protective order. *See*

---

**3.** Section 14141 provides that the Attorney General may institute a civil action if it has reasonable cause to believe that a constitutional violation has occurred. *See* 42 U.S.C. § 14141(b). By initiating a civil action, the Government could take advantage of all the discovery devices available to any civil litigant including subpoena power and party discovery.

**4.** The UF–250 database is a compilation of the reports of stops conducted by SCU officers.

**5.** Recognizing the privacy interests of the parties, the Government only seeks access to those confidential materials that do not disclose any personal information of the plaintiffs or the individual defendants.

*Crothers v. Pilgrim Mortgage Corp.*, No. 95 Civ. 4681, 1997 WL 570583, at *4 (S.D.N.Y. Sept. 11, 1997) (citing *Bayer AG and Miles, Inc. v. Barr Labs., Inc.*, 162 F.R.D. 456, 462–63 (S.D.N.Y.1995)).

■ The Government argues that the standard governing access by a private party to a matter of public interest (i.e., the *Agent Orange* standard) should apply. *See* Gov't Mem. at 12–13. This lesser standard is arguably applicable here because, like a private litigant, the Government has no mechanism to compel the City to provide it with information. On the other hand, the City argues that the Second Circuit has consistently and uniformly applied the *Martindell* standard whenever a government agency has sought modification of a protective order in a civil action. *See* Memorandum of Law in Opposition to the Government's Motion to Intervene for Modification of the Protective Order ("Opp.Mem.") at 9. The City then argues that the existence of an extensive investigation into a matter of serious public interest in not an extraordinary circumstance and does not demonstrate a compelling need warranting modification of the protective order. *See id.* at 15.

The facts of *Martindell* are instructive. In that case, certain witnesses had given deposition testimony in reliance on a stipulation of confidentiality. *See Martindell*, 594 F.2d at 293. Rather than reconvene the grand jury, which had been dismissed, to obtain the testimony of the witnesses, the Government moved to intervene. *See id.* at 293, n. 5. The district court denied the Government's request and the Second Circuit affirmed, stating

> the Government as investigator has awesome powers which render unnecessary its exploitation of the fruits of private litigation. Normally the Government may institute or continue a grand jury proceeding and, in connection therewith, subpoena witnesses to testify....

> \* \* \* \* \* \*

{A]bsent a showing of improvidence in the grant of a Rule 26(c) protective order or some extraordinary circumstance or compelling need, ..., a witness should be entitled to rely upon the enforceability of a protective order against any third parties, including the Government, and that such an order should not be vacated or modified merely to accommodate the Government's desire to inspect protected testimony for possible use in a criminal investigation....

*Id.* at 296 (internal quotation marks and citation omitted). In so holding, the *Martindell* court acknowledged that the witnesses would not have testified absent the protective order. *See id.* at 297, n. 8.[6]

The City relies on a number of cases citing *Martindell* in support of decisions that deny modification of protective orders. Each of these cases, however, is distinguishable from the case at hand. For example, in *Minpeco S.A. v. Conticommodity Servs., Inc.*, 832 F.2d 739 (2d Cir.1987), the Second Circuit affirmed the district court's denial of a motion by the Commodity Futures Trading Commission ("CFTC") to modify a protective order. The court stated:

> The CFTC concedes that it has already obtained voluminous discovery in its ongoing administrative action.... Indeed the primary purpose of the CFTC in seeking modification of the protective order is to compare the fruits of plaintiff's discovery here with the results of its own investigation, in order to evaluate compliance with its own subpoenas and ascertain the truth of much of what it has independently discovered.

*Id.* at 743. Here, the Government has not yet brought an action against the NYPD and the discovery it seeks is not requested for comparative purposes. *See also Palmieri v. State of New York*, 779 F.2d 861, 866 (2d Cir.1985) ("We note that the State of New York enjoys a similarly privileged position with respect to its investigatory powers. For example, it has the power to subpoena persons and documents before the grand jury."); *H.L. Hayden Co. of New York*, 797 F.2d at

---

**6.** The *Martindell* court distinguished the production of existing documents from the testimony of witnesses who might have asserted a privilege

and refused to testify without the protective order. *See id.*

88 ("New York's power of subpoena raises a rebuttable presumption against its argument that is has no reasonable alternative to the method of investigation it seeks to pursue.") (citing *Palmieri,* 779 F.2d at 866).

■ The Government has been investigating alleged misconduct by the NYPD, specifically the SCU, for over two years. In this context, the Government has no "awesome powers" to compel pre-action,[7] investigatory discovery.[8] Nonetheless, the Government has the "awesome power" of using its virtually limitless resources to sue the City, and thereby potentially trigger a freeze on funding. *Cf. Wardius v. Oregon,* 412 U.S. 470, 480, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973) ("[T]he Constitution recognized the awesome power of indictment and the virtually limitless resources of government investigators."). *See also United States v. Epstein,* No. 96 Civ. 8307, 1998 WL 67676, at *2 (S.D.N.Y. Feb. 19, 1998) (Government's ability to use confidential tax information limited to purposes of the instant suit. The court noted that the "Government will still be able to fulfill its statutory obligation to enforce the law ... by taking advantage of the substantial resources available to the Government to investigate suspected violations of the law."). By bringing suit, the Government could obtain full discovery and thereby expose any of the NYPD's alleged unconstitutional practices to public scrutiny.

The City further argues that Congress deliberately chose not to provide the Government with the enhanced investigatory powers it provided in areas such as organized crime, antitrust and health care fraud investiga-

tions, to name only a few. *See* Transcript of March 30, 2001 Oral Argument ("Tr.") at 18. This decision should not be circumvented, the City argues, because of the fortuity of this private lawsuit. The City's argument is persuasive. In the absence of the pending private class action, the Government would be forced to conduct its own investigation without the benefit of pre-action discovery, subpoena power, or civil investigative demands. To provide the Government with discovery tools it would otherwise not have merely because it is the Government and not a private party is both counterintuitive and illogical. *See GAF Corp. v. Eastman Kodak Co.,* 415 F.Supp. 129, 132 (S.D.N.Y.1976) ("Ours is not an era for fashioning lightly, from conditions at best ambiguous, an arsenal of new implements for governmental intrusions."). Thus, the *Martindell* standard remains the appropriate standard to apply to the Government's request to intervene.

**B. Application of the *Martindell* Standard**

■ Under the *Martindell* standard, the Government has the burden of demonstrating either extraordinary circumstances or a compelling need justifying modification of the protective order. The Government has failed to meet this burden. At oral argument, the Government asserted that it required the requested materials in order to make a careful and thorough decision as to whether to bring an action against the City. *See* Tr. at 9. The Government noted that the filing of such a suit could have dire repercussions for the City.[9] *See id.* at 10–11. In addition, the Government argued that the overwhelming

---

**7.** Pre-action discovery is generally not permitted. *Cf. In re Solorio,* 192 F.R.D. 709 (D.Utah 2000) (Rule 27 of the Federal Rules of Civil Procedure was " 'not intended as a means of discovery to ascertain facts for the use in framing a complaint.' ") (quoting *In re Gary Constr., Inc.,* 96 F.R.D. 432, 433 (D.Colo.1983) and citing *Penn Mut. Life Ins. Co. v. United States,* 68 F.3d 1371 (D.C.Cir.1995)).

**8.** Section 14141 does not provide for investigatory tools such as administrative subpoenas or civil investigative demands. *See* Opp. Mem. at 12. While the parties did not brief the scope of 42 U.S.C. § 3789d(c), this statute similarly does not provide the Government with any special investigatory tools.

**9.** Specifically, the Government points to the impact a formal filing could have on the public's confidence in the NYPD. The Government also argues that "the mere filing of a lawsuit by the Government puts the City at risk of a suspension in the payment of certain federal funds to the NYPD." Reply Mem. at 3 (citing 42 U.S.C. § 3789d(c)(2)(E)). This concern may be unwarranted, however, as this section contemplates the suspension of funds "to that specific program or activity alleged by the Attorney General to be in violation...." Whether that statute could be applied to suspend federal funds to the NYPD as a whole, based on its allegedly discriminatory stop and frisk practices, is uncertain. In any event, a party to the civil action filed by the Attorney General could, within forty-five days, move for preliminary relief with regard to the

public interest in its investigation of the NYPD's stop and frisk practices constitutes an extraordinary circumstance warranting the requested modification. *See id.* at 4, 14.

The City, in turn, argued that the Government has shown neither a compelling need nor an extraordinary circumstance warranting modification of the protective order. According to the City, the mere fact that the investigation involves a matter of public interest is not extraordinary given that most Government investigations involve issues of public interest. *See* Opp. Mem. at 15. I agree. To hold otherwise would effectively eviscerate the *Martindell* standard. While acknowledging the serious repercussions of a lawsuit by the Government, the City nonetheless prefers to risk a suit rather than voluntarily provide further documentation. *See* Tr. at 16.

Because this decision seemed odd, if not reckless, I questioned the City at oral argument as to why it would prefer the risk of a lawsuit to continued voluntary disclosure which might result in termination of the Government's investigation without the filing of a lawsuit. *See* Tr. at 19–20. In response, the City intimated its concerns that the Government may have misused the information voluntarily provided to it, that the investigation may not have been conducted in good faith, and that the City has been under investigation for an unduly long period of time.[10] *See id.* at 21. The City recognizes that by terminating its voluntary cooperation and opposing modification of the protective order it is forcing the Government's hand.[11] Either the Government will sue—and thereby obtain all discovery to which a party is entitled—or it will not. The City has opted to take this risk and that is its choice. Absent a compelling need or extraordinary circumstance the Government is not entitled to the protected materials.

Although under the *Martindell* standard, the City has no burden to demonstrate the need for continued confidentiality, the City has shown good cause for keeping the materials confidential. The protective order at issue has been carefully crafted to protect only limited materials upon a showing of good cause or agreement by the parties. No party can unilaterally designate confidential materials. More importantly, the parties have relied on the protective order during the course of this litigation. Undoubtedly, the dynamics of the discovery process would have been different if the Government was present from the start. To now permit the Government access to confidential discovery would unduly interfere with the parties' legitimate expectations of confidentiality. *Cf. Martindell,* 594 F.2d at 295 ("Unless a valid Rule 26(c) protective order is to be fully and fairly enforceable, witnesses relying upon such orders will be inhibited from giving essential testimony in civil litigation, thus undermining a procedural system that has been successfully developed over the years for the disposition of civil differences."). Such access could also pave the way for criminal prosecutions and give the Government an undue advantage in framing its complaint. Thus, even were I to apply the less stringent *Agent Orange* standard, I would not modify the protective order as the City has shown good cause for continued confidentiality.

## IV. CONCLUSION

In sum, the Government has failed to demonstrate an extraordinary circumstance or compelling need for the confidential materials in issue. Accordingly, the Government's motion to intervene for the purpose of modifying the protective order is DENIED.

SO ORDERED:

---

suspension of funds. *See* 42 U.S.C. § 3789d(c)(2)(E). Moreover, the court could also order resumption of payments. Thus, the possible suspension of funds is not as dire as the Government posits.

**10.** At one point during the oral argument, I proposed an exchange—the Government could ob-

tain the requested information and in return would agree to terminate its investigation within 90 or 120 days. *See* Tr. at 28. The Government did not accept this proposal.

**11.** The plaintiffs do not oppose the requested modification.