## In re NASDAQ MARKET–MAKERS ANTITRUST LITIGATION.

**M.D.L. No. 1023.**
**94 Civ. 3996 (RWS).**

United States District Court,
S.D. New York.

Jan. 16, 1996.

---

Fine Kaplan and Black (Arthur M. Kaplan, of counsel), Philadelphia, PA, Milberg Weiss Bershad Hynes & Lerach (Leonard B. Simon, of counsel), San Diego, CA, Lovell & Skirnick, L.L.P. (Christopher Lovell, Robert A. Skirnick, of counsel), New York City, for plaintiff.

Shearman & Sterling, Liaison Counsel (Joseph T. McLaughlin, James T. Halverson, of counsel), New York City, for Defendants and Defendant Herzog, Heine, Geduld, Inc.

Morgan, Lewis & Bockius L.L.P. (Catherine A. Ludden, of counsel), New York City, for Defendant Mayer & Schweitzer, Inc.

Sullivan & Cromwell (Philip L. Graham, of counsel), New York City, for Defendant UBS Securities, Inc.

Patterson, Belknap, Webb & Tyler L.L.P. (Robert P. LoBue, of counsel), New York City, for L.A. Times—Third Party Intervenor.

### OPINION

SWEET, District Judge.

Defendants have moved to strike the tenth through fourteenth paragraphs (the "Subject Paragraphs") of the affidavit of one of Plaintiffs' attorneys, Christopher Lovell ("Lo-

vell"), filed under seal in support of Plaintiffs' motion to compel discovery (the "Lovell Affidavit"). The *Los Angeles Times* (the "L.A. Times") has moved by order to show cause (1) to intervene in this action for the limited purpose of making its other motions here, (2) to have Defendants file seventeen hours of audiotapes that they have produced to Plaintiffs in the course of discovery (the "Tapes"), (3) to disclose the contents of the Tapes, which motion will be treated as a motion to modify a protective order issued by this Court (the "Protective Order") concerning, *inter alia,* the Tapes, and (4) to unseal the Lovell Affidavit, which motion will be treated as a motion to modify the Protective Order.

For the reasons set forth below, Defendants' motion to strike is denied. The L.A. Times's motion to intervene for the limited purposes described is granted. The L.A. Times's motion to require that the Tapes be filed is granted in part and denied in part. The L.A. Times's motion to have the Tapes disclosed is denied, with leave granted to renew. The L.A. Times's motion to have the Lovell Affidavit unsealed is granted in part and denied in part, with leave granted to renew.

### Background

The first class action complaint in what has become a multidistrict case, *In re NASDAQ Market–Makers Litigation,* MDL 1023, was filed on May 27, 1994, alleging improper manipulation of spreads on the NASDAQ exchange. Eventually more than two dozen complaints were filed around the country by various plaintiffs (the "Plaintiffs") alleging variations on the theme that the NASDAQ market-makers had engaged in a conspiracy to avoid odd-eighth quotes in violation of the Sherman Act, 15 U.S.C. § 1. On October 14, 1994, the Judicial Panel on Multidistrict Litigation ordered that the actions already filed and any actions filed later be assigned to this Court. A "Consolidated Amended Complaint" was filed on December 16, 1994. More than thirty actions involving thirty-three defendants (the "Defendants") have now been consolidated in this Court as part of the multidistrict litigation.

Several related proceedings have been commenced. In October 1994, the Antitrust Division of the Department of Justice (the "DOJ") announced that it would undertake a broad review of a number of aspects of NASDAQ's market structure. On November 14, 1994, the Securities and Exchange Commission (the "SEC") announced that it would review the operation of NASDAQ, including the spreads issue alleged in the Consolidated Amended Complaint and broader issues concerning the structure of the market itself. In addition, on November 20, 1994, the National Association of Securities Dealers ("NASD") announced the formation of a seven-member panel to undertake a plenary review of the effectiveness of its own operation and surveillance.

By opinion dated August 4, 1995, this Court dismissed the Consolidated Amended Complaint with leave to replead, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for having failed to allege with sufficient specificity a claim upon which relief could be granted. *In re Nasdaq Market–Makers Antitrust Litig.,* 894 F.Supp. 703 (S.D.N.Y.1995) (Sweet J.). On August 22, 1995, Plaintiffs refiled their Consolidated Complaint (the "Refiled Complaint"). The Refiled Complaint alleges, *inter alia,* that traders employed by Defendants are in constant communication with one another by telephone and computer links and use those communications to implement and enforce the conspiracy to maintain artificially large spreads between bid and ask prices of securities traded on the NASDAQ system.

Soon after the complaint was refiled, this Court issued two orders following stipulation of the parties. The first is a "Stipulated Order Regarding Initial Discovery" (the "Initial Discovery Order"), dated September 18, 1995. It provides in relevant part for Defendants to produce to Plaintiffs those documents that have been produced to the DOJ in connection with the latter's investigation and which are also responsive to Plaintiffs' document requests in this case. In relevant part, the Initial Discovery Order provides that Defendants are to produce "only those conversations in the [Civil Investigative Demand] production that are related to spreads, or the alleged presence, absence, avoidance or elimination of odd-eighth quotations, or

complaints to or about another market maker's quotations relating to the spreads."

The second order is a "Stipulated Order Regarding Confidential Documents" (the "Protective Order"), dated October 12, 1995, which authorizes the parties to designate material produced in discovery for confidential treatment. It reads in relevant part:

3. *Materials Entitled to Protection.* A party or other person shall designate for confidential treatment only documents, terms or information which the party believes in good faith contains material constituting a trade secret in the possession of the designating party or person, or confidential research, development, personal or commercial information, the disclosure of which to that party's or person's competitors or other third parties would result or reasonably could result in detriment to the designating party or person or the subject of the information disclosed.

The Protective Order requires that any paper filed with the Court that "makes use" of confidential documents or information be filed under seal.

There exists a large number of audiotapes of telephone calls between traders employed by various Defendants, amounting to approximately six thousand hours of conversation. Those tapes were reportedly delivered to the DOJ in response to its civil investigative demands and were also called for in Plaintiffs' document demands in this action. Accordingly, a portion of those tapes became subject to production by Defendants pursuant to the Initial Discovery Order, which expressly refers to the tapes.

Defendants completed their initial productions under the Initial Discovery Order on November 18, 1995. On December 6, 1995, Plaintiffs filed a motion to compel discovery (the "Motion to Compel"), which the Court made returnable January 17, 1996. Accompanying the Motion to Compel were a publicly-filed Memorandum in Support (the "Brief") and the Lovell Affidavit, which was filed under seal. An original of each document was filed with the Clerk of Court. The Motion to Compel seeks relief in various forms, one of which is leave for Plaintiffs to consult with the DOJ as to the adequacy of

Defendants' prior document productions. Plaintiffs base their request for that relief in part on their asserted need to verify that the Tapes produced by Defendants represent all of the tapes to which Plaintiffs are entitled under the Initial Discovery Order.

The Brief cites in several places, but does not quote from, the Tapes. An example of such a statement is as follows: "The importance of these incriminating tapes is indicated in an Affidavit of Christopher Lovell filed under seal, quoting examples from the tapes." The Lovell Affidavit contains two Sections concerning the Tapes. Section II(A) addresses alleged deficiencies in Defendants' production. Section II(B) seeks to demonstrate that taped conversations are "highly relevant" and therefore critical to Plaintiffs' case. The Substantive Paragraphs appear in Section II(B) and set out transcriptions of portions of twelve conversations selected by Plaintiffs from the seventeen hours produced, which the Lovell Affidavit asserts are "incriminating" and "support some of the most important allegations in Plaintiffs' Complaint." (The cassettes containing recordings of the lines cited in the Lovell Affidavit will be referred to as the "Cited Tapes".)

The L.A. Times, which has printed several articles on this action, the related investigations, and the underlying facts, brought its order to show cause on December 12, 1995. Defendants brought their order to show cause to strike on December 15, 1995. Opposition to the motions was filed, and oral argument was heard on the motions of both the L.A. Times and Defendants on December 18, 1995, at which time both motions were considered fully submitted.

**Discussion**

### I. Defendants' Motion to Strike the Subject Paragraphs Will Be Denied

Rule 12(f) of the Federal Rules of Civil Procedure provides that a court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A court has inherent authority to strike any filed paper which it determines to be abusive or otherwise improper under the circumstances.

*See, e.g., Jenkins v. City of New York,* No. 91 Civ. 3639 (RLC), 1992 WL 147647 (S.D.N.Y. June 15, 1992) (striking affidavit opposing summary judgment as improper hearsay). However, "[m]otions to strike are not favored and will be denied unless the allegations have no possible relation to the controversy. . . . If there is any doubt whether the challenged matter may raise an issue of fact or law, the motion to strike should be denied." *Sunshine Cellular v. Vanguard Cellular Sys.,* 810 F.Supp. 486, 499–500 (S.D.N.Y.1992) (citations omitted).

■ To prevail on a motion to strike, Defendants must show that "it is clear that the [challenged matter] has no bearing on the subject matter of the litigation and that its inclusion will prejudice the defendants." *FRA S. p.A. v. Surg–O–Flex of America, Inc.,* 415 F.Supp. 421, 427 (S.D.N.Y.1976) (citations omitted); *see also Burger v. Health Ins. Plan of Greater N.Y.,* 684 F.Supp. 46, 52–53 (S.D.N.Y.1988) (granting motion to strike where material was irrelevant to issues at hand and prejudicial).

Defendants first contend that the quotations included in those paragraphs are immaterial and impertinent to the motion to compel and have no bearing on the subject matter of this litigation. In support of this argument, Defendants note that the Brief refers to the Subject Paragraphs only twice, citing them merely for the proposition that the tapes are "important". Further, according to the Defendants, because neither the potential relevance of the tapes to be produced under the Initial Discovery Order nor the responsiveness of the tapes produced is in dispute, the Lovell Affidavit need not have recited the contents of the tapes.

Although the quotations from the Cited Tapes included in the Subject Paragraphs may be somewhat more lengthy or numerous than required at minimum to support the point Plaintiffs seek to make to the Court on their Motion to Compel, those quotations are relevant, and, therefore, they will not be struck. In deciding the Motion to Compel, this Court will weigh the value of the material sought against the burdensomeness, need, privilege, or other interest Defendants seek to be protected. *See* Rule 26(g), Fed.

R.Civ.P. Knowledge of the nature of the material already disclosed may aid the Court in assessing the value of the material sought.

Defendants contend that the content and characterization of the seventeen hours of Tapes already produced fails to bear on the other tapes or on the thoroughness of Defendants' compliance with the Initial Discovery Order, because the quotations contained in the Subject Paragraphs reflect neither the seventeen hours of tapes produced nor the other six thousand hours of conversation. However, Plaintiffs' selective inclusion of quotations may well instead be useful to the Court in deciding the Motion to Compel for the reasons noted above.

Defendants also contend that the quotations take their employees' conversations out of context. They note that the Affidavit quotes only a few carefully edited portions of twelve selected telephone calls of only a few minutes' duration out of the seventeen hours of the Tapes, and that this lack of context bears the potential to prejudice the Court by leading it to believe that similar statements permeate the conversations in the remaining six thousand hours of tape. The Court will not be prejudiced, however, and, in any case, Defendants are free to raise these arguments in their opposition to the Motion to Compel.

Defendants' motion to strike will be denied.

## II. *The L.A. Times's Motion to Intervene Will Be Granted for the Limited Purpose of Making Its Other Two Motions Here and to Renew Those Motions in the Future*

■ Rule 24(a)(2) of the Federal Rules of Civil Procedure provides that intervention shall be granted as of right when an applicant:

> claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

The L.A. Times meets these criteria. First, the L.A. Times has articulated an interest relating to this action. Generally, "representatives of the press and general public 'must be given an opportunity to be heard on the question of their exclusion.'" *Globe Newspaper Co. v. Superior Court for Norfolk County*, 457 U.S. 596, 609 n. 25, 102 S.Ct. 2613, 2621 n. 25, 73 L.Ed.2d 248 (1982) (*quoting Gannett Co. v. DePasquale*, 443 U.S. 368, 401, 99 S.Ct. 2898, 2916–17, 61 L.Ed.2d 608 (1979) (Powell, J., concurring)). As a newspaper of national importance, the L.A. Times has been among the most active in conveying to the financial community and the public the details of this action and the facts and allegations which underlie it. The newsworthiness of these allegations is illustrated by the attention that the L.A. Times and other news media have accorded the subject. The Tapes in particular, may be useful to the L.A. Times in fleshing out its coverage of this story and informing public debate on NAS-DAQ and on governmental regulation of capital markets.

Looking to the second criterion suggested by Rule 24(a)(2), neither Plaintiffs nor Defendants adequately represent the interest of the L.A. Times in filing the Tapes or in disclosing their contents or those of the Lovell Affidavit. Defendants have opposed the L.A. Times' motion and, thus, clearly do not represent the L.A. Times' interests. Plaintiffs neither directly support nor directly object to the motion, but they do oppose relief to the L.A. Times to the extent that it will bear an *adverse impact on Plaintiffs'* future right to discovery. Therefore, Plaintiffs do not adequately represent the interest of the L.A. Times, and the L.A. Times thus meets the second criterion for intervention.

Finally, our Court of Appeals has suggested that intervention under Rule 24 is the proper mechanism for a non-party to seek modification of a protective order and thus to gain access to information generated through judicial proceedings. *See, e.g., Palmieri v. State of New York*, 779 F.2d 861 (2d Cir. 1985); *Martindell v. International Tel. & Tel. Corp.*, 594 F.2d 291 (2d Cir.1979); *see also Havens v. Metropolitan Life Ins. Co.* ("*In re Application of Akron Beacon Journal*" or "*Akron Beacon*"), 1995 WL 234710, U.S.Dist. LEXIS 5183 (S.D.N.Y. Apr. 20, 1995) (Haight, J.).

The L.A. Times' motion to intervene will be granted for the limited purposes of making its other motions and, *ex ante*, to renew in the future those of its motions which will be herein denied.

### III. *The L.A. Times' Motion to Require that the Tapes Be Filed Will Be Granted in Part and Denied in Part: Only the Cited Tapes Will Be Filed*

■ In this District, parties are not required to file materials passed between them in the course of discovery, nor are such materials generally filed as a matter of practice. Filing is not required by the rules governing filing. Rule 5(d) of the Federal Rules of Civil Procedure, which addresses filing requirements, states that "[a]ll papers after the complaint *required to be served upon a party* . . . shall be filed with the court within a reasonable time after service . . . ." Rule 5(d), Fed.R.Civ.P. (emphasis added). For tangible items involved in discovery, the only papers required to be served are requests for production or inspection and responses regarding those requests, which "shall state, with respect to each item or category, that inspection and related activities will be permitted as requested" or any objections. Rule 34, Fed.R.Civ.P. The discovery materials themselves are not served on a party: "A party who produces documents for inspection" need only "produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request." *Id.* Thus, materials produced pursuant to Rule 34 need not be served and, therefore, under Rule 5, need not be filed.

In any case, Local Rule 18(a) of the Joint Rules of the U.S. District Courts for the Southern and Eastern Districts of New York ("Local Rule 18(a)") makes clear both that Federal Rules 5 and 34 do not contemplate production of materials produced in discovery and that, in any case, even materials surrounding discovery need not be filed. Local Rule 18(a) states that "depositions, interrogatories, requests for documents, requests for admissions, and answers and responses

shall not be filed with the clerk's office except by order of the court." The absence of materials produced in the course of discovery from this list does not indicate that they are to be filed as a matter of course; rather, the list of materials in Local Rule 18(a) includes only those materials that Rule 5 would otherwise require to be produced.

There remain, however, occasions on which filing of materials produced in the course of discovery should be filed as a matter of the Court's discretion. As our Court of Appeals has noted, it is important that "the general public be afforded access to discovery materials whenever possible. Moreover, . . . access is particularly appropriate when the subject matter of the litigation is of especial public interest. . . ." *In re Agent Orange Product Liability Litig.*, 821 F.2d 139, 146 (2d Cir.), *cert. denied*, 484 U.S. 953, 108 S.Ct. 344, 98 L.Ed.2d 370 (1987). The Federal Rules do reflect a commitment to filing of materials that bear on the public interest and the court's adjudication. The Advisory Committee note accompanying Rule 5(d) demonstrates the Committee's awareness that at least materials surrounding discovery—and, perhaps materials produced in the course of discovery—"are sometimes of interest to those who may have no access to them except by a requirement of filing, such as members of a class, litigants similarly situated, or the public generally." Fed.R.Civ.P. 5(d) advisory committee note. *Agent Orange*, 821 F.2d at 146. The adoption of Local Rule 18(a) does not mitigate this concern, for that rule is based on pedestrian considerations, adopted "due to the volume of discovery materials in the Southern and Eastern Districts of New York." *Id.*

Here, the L.A. Times has amply demonstrated the importance of the Tapes to the public. First, as noted above in the discussion of the L.A. Times' motion to intervene, this action has broad implications for the financial industry and the public as a whole. Second, excerpts from the Cited Tapes are set forth in the Lovell Affidavit, which may be used by this Court in deciding the Motion to Compel, and "professional and public monitoring [of the courts] is an essential feature of democratic control." *United States v.*

*Amodeo ("Amodeo II ")*, 71 F.3d 1044, 1048 (2d Cir.1995). Third, although the Protective Order will not be modified at this time to disclose the contents of the Tapes, their preservation by the parties will permit the L.A. Times and any subsequent intervenors to renew their motions at a later date.

Finally, it is noteworthy that Local Rule 18(b) requires a party seeking a protective order under Rule 26 to file with the clerk the portion of the materials that are objected to. Although in the matter at bar the Protective Order has already been issued, Local Rule 18(b) implies that where the production of discovery materials is a matter of controversy, as here, the Court's general administrative considerations reflected in Local Rule 18(a) are subordinated to its concern that those materials be made a part of the official record.

These interests are sufficient to mandate filing of the Cited Tapes, but, as discussed below not to mandate disclosure at this time. Therefore, the Cited Tapes will be filed under seal with the Clerk of Court.

### IV. The L.A. Times's Motion to Modify the Protective Order to Unseal the Tapes Will Be Denied

The L.A. Times's motion to disclose the contents of the Tapes will be treated as a motion to modify the Protective Order to mandate unsealing the Cited Tapes. Our Court of Appeals spoke very recently to the question of confidentiality of materials on file with the Court. *United States v. Amodeo ("Amodeo I ")*, 44 F.3d 141 (2d Cir.1995); *Amodeo II, supra.* In the *Amodeo* cases, the Court established a two-part test to determine if judicial documents under seal should be unsealed. A court must first determine how strong a presumption of access exists surrounding the document to which access is sought. Second, the court must weigh against that presumption those countervailing considerations supporting confidentiality.

Not all materials involved in a litigation, and not all materials on file with the court, are judicial documents. In *Amodeo I*, as part of a consent decree in a Racketeer Influenced and Corrupt Organization ("RICO") action brought by the United

States against a labor union, a court officer was appointed to monitor the union. *Amodeo I*, 44 F.3d at 146. A newspaper sought access to the reports which the court officer had voluntarily filed with the district court. A law firm which had worked on behalf of the labor union sought to have the reports sealed to protect its privacy and the privacy of one of its lawyers, who had recently been appointed to a high post in the Clinton administration. The trial court, finding a presumption of access, released to the newspaper a version of the court officer's report. Before it was released by the court, the report was redacted by the court officer, to protect the identity of some of her sources, and so as not to hinder her ongoing investigation. The law firm appealed the report's release. The Court of Appeals held, *inter alia*, that the report was a judicial document and was, thus, presumed to be open to inspection by the public. *Id.* at 148. Because the Court also held that the district court, rather than the court officer, should have redacted the report, the case was remanded.

On appeal for a second time, the Court of Appeals established the *Amodeo* balancing test, setting out the standards to be used in balancing the presumption of access to judicial documents against the objections of parties seeking confidentiality. Assuming for the purposes of this motion that the Cited Tapes are judicial documents, an application of the *Amodeo II* test, set forth below, demonstrates a minimal presumption of access to the Cited Tapes outweighed by strong countervailing factors.

### 1. *The Presumption of Access is Minimal*

In reversing the trial court's order unsealing a part of the court officer's report, the Court of Appeals made clear that the presumption of access set out in *Amodeo I* is not absolute. *Amodeo II* held that:

the weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts. Generally, the information will fall somewhere on a continuum from

matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance.

*Amodeo II*, 71 F.3d at 1049. As one moves along that continuum, the Court noted, gaining distance from documents that play a great role in litigants' substantive rights, "the weight of the presumption declines." *Id.* at 1049.

The tapes requested by the L.A. Times are, at this stage of the litigation, clearly at the end of the continuum farther away from the presumption of access. Although the Tapes—if offered to support a dispositive motion or as evidence at trial—may later directly affect Court action with respect to this matter, and are, therefore, appropriately subject to public scrutiny, they are at present only tangential to the Article III functions of the Court. They are currently relevant only because selected portions have been cited by the Lovell Affidavit, and the Lovell Affidavit is before the Court only to support a discovery motion. Indeed, the *Amodeo II* court noted that:

it must be recognized that an abundance of statements and documents generated in federal litigation actually have little or no bearing on the exercise of Article III judicial power. [T]he temptation to leave no stone unturned in the search for evidence material to a judicial proceeding turns up a vast amount of not only irrelevant but also unreliable material. . . . Unlimited access to every item turned up in the course of litigation would be unthinkable.

*Id.* at 1048.

The presumption of access to the Cited Tapes is lessened further by the *Amodeo II* court's injunction that:

Where statements or documents in the middle of the continuum are at issue, the weight to be accorded to the presumption of access must be determined by the exercise of judgment. That judgment can be informed in part by tradition. Where such documents are usually filed with the court and are generally available, the weight of the presumption is stronger than where filing with the court is unusual or is generally under seal.

*Id.* at 1049–50. In this District, materials produced early in discovery pursuant to protective orders are rarely filed or available and are generally under seal if filed. Although, for the reasons set out above, the Cited Tapes will be filed, the "tradition" in this District is that discovery materials are not subject to disclosure, at least while discovery is still ongoing.

Defendants argue that the Court of Appeals suggested a different tradition in *Agent Orange*. There, the Court found a statutory right of access based in Rules 5(d) and 26(c) of the Federal Rules of Civil Procedure. *Agent Orange*, however, confronted a request for disclosure of discovery materials at an advanced stage of litigation in conjunction with substantive filings in the case that bore directly on the adjudication of the merits of the case. The Special Master recommended and Chief Judge Weinstein adopted relaxation of the protective order as to confidential discovery materials submitted by the parties to accompany papers seeking summary judgment. *Agent Orange*, 821 F.2d at 142. The protective order was later modified to permit release of confidential information in connection with the government's consent to release certain information produced by the government. *Id.* at 142–43. In another instance, the protective order was modified when the parties filed their pretrial orders with the clerk, attaching the documents and deposition transcripts they intended to offer during the open trial. At that advanced stage, the pretrial orders and the exhibit lists were made accessible to the public, even though the exhibits themselves were maintained in a locked room at the courthouse. *Id.* at 143. Finally, after the controversy had been settled, additional discovery materials were made accessible to the public. *Id.*

The fact that *Agent Orange*'s presumption of access to discovery materials is diminished during the early stages of ongoing discovery is confirmed by other opinions. For instance, in its recent opinion in *United States v. Wolfson*, 55 F.3d 58 (2d Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 521, 133 L.Ed.2d 429 (1995), our Court of Appeals concluded that Wolfson, a party to a criminal action, had no right of access to documents that had been submitted to the court as part of a discovery dispute *in camera*. In so doing, the Court indicated its approval of the decision of the Court of Appeals for the First Circuit in *Anderson v. Cryovac, Inc.*, 805 F.2d 1 (1st Cir.1986), finding "no traditional public right of access even to documents actually produced in civil discovery." 55 F.3d at 61. Similarly, the Supreme Court has noted that "restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information." *Seattle Times v. Rhinehart*, 467 U.S. 20, 33–34, 104 S.Ct. 2199, 2208, 81 L.Ed.2d 17 (1984). The facts of this case fall somewhere between *Wolfson* and *Agent Orange*, but the Court's recent language in *Wolfson* and *Amodeo II* strongly suggests that the presumption of access to discovery materials set forth in *Agent Orange* was not absolute and, indeed, substantially decreased during the early, non-dispositive, discovery stages of an action.

Finally, the presumption of access is weakened by the fact that the L.A. Times will be given leave to renew its motion in the future. The public's interest in monitoring the judicial functions of the Court in this matter can still be accommodated if the L.A. Times' motion is granted at a later date, once the possibility of disrupting discovery has diminished. Similarly, the public's interest in garnering the substantive details that may be contained in the Tapes is likely to be served once the merits of the case are addressed by the Court on a dispositive motion or at trial. In the meantime, the public interest will be served as greatly by a swift and efficient resolution to the action as it will by immediate disclosure of the contents of the Cited Tapes.

### 2. *The Countervailing Considerations Outweigh the Minimal Presumption of Access*

"Once the weight of the presumption is determined, a court must balance competing considerations against it." *Amodeo II*, 71 F.3d at 1050. The *Amodeo* Court cited two such considerations, though not exclusively: "(i) the danger of impairing law enforcement or judicial efficiency and (ii) the privacy interests of those resisting disclosure." *Id.*

Here, the danger of impairing judicial efficiency is quite substantial. Although the privacy interests—as meant by *Amodeo II*— of Defendants are not directly implicated, Defendants' ability to protect their trade secrets and other commercial information, a similar and, as discussed below, as oft-endorsed interest, is heavily implicated.

In addressing the first countervailing factor in *Amodeo II*, the court sought to determine whether "public access to the materials at issue is likely to impair in a material way the performance of Article III functions." *Id. (citing United States v. Valenti*, 987 F.2d 708, 714 (11th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 289, 126 L.Ed.2d 238 (1993)). Because of the stage and complexity of this litigation, disclosure of the Cited Tapes at this juncture runs a serious risk of hindering the Court's ability to oversee the discovery phase of the litigation. As noted in *Amodeo II*:

> [a]lthough courts have compulsory process available to compel the giving of evidence or the production of documents, cooperation is also often essential to judicial efficiency. If release is likely to cause persons in the particular or future cases to resist involvement where cooperation is desirable, that effect should be weighed against the presumption of access.

*Amodeo II*, 71 F.3d at 1050.

The Initial Discovery Order and the Protective Order were negotiated with great difficulty by the dozens of parties to this action at the direction of the Court. The efficient administration of this complex case will be jeopardized by permitting public access to discovery materials at this stage of the litigation. The substantial production to date of documents and other materials has been greatly facilitated by Defendants' expectation of confidentiality. Moreover, as one court has so aptly expressed, in complex civil litigation, without a blanket order such as exists here, "the judge is a veritable hostage; failure to approve an umbrella protection order is a consignment to years of adjudication of the confidentiality of individual documents." *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 529 F.Supp. 866, 879 (E.D.Pa.1981) (Becker, J.). This Court will be hindered

severely in executing its Article III functions if it is overwhelmed with future disputes over the extent and accessibility of discovery.

Defendants have, in addition, presented a second, equally compelling countervailing factor: the possibility of disclosure of their trade secrets. The courts have long recognized the protection of trade secrets as an important interest underlying confidentiality. Rule 26(c) itself provides that among the measures that may be taken to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" is "that a trade secret or other confidential research, development, or commercial information not be revealed...." Rule 26(c), Fed.R.Civ.P. The Tapes as a whole contain, Defendants affirm, internal telephone calls between their trading desks and sales desks. These calls are said to identify customers and transactions in specific securities at specific prices and in specific amounts and to disclose trading strategies for executing customer orders against the trading desks at other market-making firms. This is exactly the sort of confidential commercial information contemplated by Rule 26(c).

The L.A. Times objects that the seventeen hours of Tapes must contain at least some information that is relevant to the litigation but does not reveal trade secrets. Defendants aver that some of the conversations deserving protection also include references to spreads and to the usage or avoidance of odd-eighths quotes; indeed, that is why they were selected from the original six thousand hours of tapes. Were the justly confidential portions of the Tapes easily separable from the relevant portions not deserving protection, then disclosure of the latter would be appropriate. However, Defendants affirm that the pertinent exchanges are inextricably interspersed with the material revealing trade secrets, often in the same conversation. As a result, disclosure of one would, in effect, disclose the other. Redaction of these confidential portions of the Tapes would require enormous time and expense.

Given the minimal presumption of access and the strength of these two countervailing factors, the *Amodeo II* analysis indicates that disclosure of the Cited Tapes at this juncture

would fail to serve the ultimate needs of the parties, the Court, the public, or justice.

*Amodeo* did not specifically address the question of documents filed under seal because of a Protective Order, but the *Amodeo* analysis is buttressed by a separate line of cases specifically addressing modification of protective orders. One of the few clear notes amid "the chaos that now characterizes this area of the law," *H.L. Hayden Co. v. Siemens Medical Sys., Inc.*, 106 F.R.D. 551, 552 (S.D.N.Y.1985), is that the court that has issued a protective order is granted broad discretion in determining whether to modify that order. *See, e.g., Agent Orange*, 821 F.2d at 147.

Our Court of Appeals, as it indicated in *Martindell v. International Tel. & Tel. Corp.*, 594 F.2d 291, 295 (1979) (Mansfield, J.), has been among the circuit courts most discouraging of modification of protective orders. *See* § 2044.1, 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure*, at 578. It has emphasized:

> the vital function of a protective order issued under Rule 26(c), F.R.Civ.P., which is to "secure the just, speedy, and inexpensive determination" of civil disputes, Rule 1, F.R.Civ.P., by encouraging full disclosure of all evidence that might conceivably be relevant. This objective represents the cornerstone of our administration of civil justice.

*Id.* at 295 (1979) (Mansfield, J.). Thus, the *Martindell* court, addressing a third-party request by the government to modify a protective order, held that such an order should be enforced "absent a showing of improvidence in the grant of a Rule 26(c) protective order or some extraordinary circumstance or compelling need...." *Id.* at 296.

Since *Martindell*, this rule has been held to be somewhat less absolute, *see Akron Beacon Journal*, 1995 WL 234710 (S.D.N.Y. 1995); *Bayer AG and Miles, Inc. v. Barr Laboratories, Inc.*, 162 F.R.D. 456, 460–61 (S.D.N.Y.1995), and subsequent courts have suggested that the high *Martindell* standard of improvidence applies only in two instances. *Id.*

One is where the government is the intervening party because it is capable of obtaining the protected material through its broad investigatory powers. *See Palmieri v. New York*, 779 F.2d 861, 866 (2d Cir.1985); *see also Minpeco S.A. v. Conticommodity Servs., Inc.*, 832 F.2d 739, 742 (2d Cir.1987); *Akron Beacon*, 1995 WL 234710 at \*10–\*11; *Bayer*, 162 F.R.D. at 460–61. In this Court's recent decision in *Akron Beacon Journal*, the Honorable Charles S. Haight confronted a request by a newspaper to modify a Protective Order imposed by another court before transfer to this District. Judge Haight, examining the cases interpreting *Martindell*, held that:

> [a]pplying this rationale to the instant case, the Journal need not show "improvidence," "extraordinary circumstance" or "compelling need." The Journal is a private litigant seeking modification of the Protective Order. As *Palmieri* suggests, the *Martindell* standard does not apply in such circumstances. The burden continues to rest with [the defendant] to show that the Protective Order had been based and continues to be based on good cause.

*Id.* at \*14.

As Judge Haight noted in *Akron Beacon*, the second instance to which the high improvidence standard of *Martindell* applies is "where a party clearly and justifiably relied on the protective order in the production of discovery." *Id.* (*citing Martindell*, 594 F.2d at 295–96; *see In re Grand Jury Subpoena Duces Tecum Dated April 19, 1991*, 945 F.2d 1221, 1225 (2d Cir.1991); *Agent Orange*, 821 F.2d at 147); *see Federal Deposit Ins. Corp. v. Ernst & Ernst*, 677 F.2d 230, 232 (2d Cir.1982) (high threshold of improvidence comes into play only "once a confidentiality order has been entered and relied upon").

Defendants relied reasonably upon the Protective Order. Although courts have been reluctant to find reliance, or that reliance was reasonable, where a protective order is, as here, a blanket order entered by stipulation of the parties, *see Agent Orange* at 147; *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 790 (1st Cir.1988), *cert. denied*, 488 U.S. 1030, 109 S.Ct. 838, 102 L.Ed.2d 970; *Akron Beacon*, 1995 WL 234710 at \*14,

here, as in *Akron Beacon,* either party can challenge the other's right to keep a document confidential and the Court reserves the power to modify a party's designation.

Further, Defendants have demonstrated that the Protective Order was issued for good cause. Rule 26(c), Fed.R.Civ.P.; *see also Akron Beacon,* 1995 WL 234710 at *11. Although the Order did include a recital that a blanket confidentiality order was necessary "[t]o expedite the flow of discovery material, facilitate the prompt resolution of disputes over confidentiality, adequately protect material entitled to be kept confidential, and insure that confidentiality is afforded only to material so entitled," no specific materials were the subject of the order at that time, and thus no particularized showing of good cause was made.

Yet, although there was no showing of good cause at the time the Protective Order was issued, good cause exists to apply the Protective Order to the Cited Tapes. In considering the countervailing factors that make up part of the application of the *Amodeo* test, the existence of trade secrets inextricably interspersed with other material in the tapes, causing redaction to lead to extraordinary time and expense for the parties, constitutes good cause. In *Agent Orange,* the Court of Appeals, albeit in dictum, noted that "the unusual scope of the Agent Orange litigation warranted imposition of the protective orders" there, which also included blanket confidentiality stipulations. *Agent Orange,* 821 F.2d at 148. The litigation here is, like *Agent Orange,* if not on quite so great a scale, an intricate, large-scale, complex, multidistrict litigation.

Further, this significant and potentially difficult litigation is in its early phase. Primary to its ultimate resolution, whether by trial or otherwise, is effective, prompt, and complete discovery, which at the same time protects the appropriate interest of the parties. Such was the purpose of the Protective Order and the section of the Protective Order requiring confidentiality of materials produced under the Discovery Order. Those purposes remain primary at this stage of the litigation. Of course, should the substance of any confidential materials be relied upon by the Court in any of its substantive determinations, those materials should, and will, be disclosed to the public.

Because the analyses derived from both *Amodeo* and the *Martindell* line of cases interpreting Rule 26(c) suggest that, at this stage of the litigation, the Cited Tapes should not be disclosed, the motion to modify the Protective Order will be denied. Defendants are, however, reminded that a showing of good cause may later be required by intervention of a third party, or by the Court *sua sponte,* with regard to these or any other documents filed under the terms of the Protective Order. The designation of a document as confidential will be viewed as equivalent to a motion for protective order and will, thus, be subject to the sanctions of Rule 26(g), Fed.R.Civ.P.

## V. The L.A. Times's Motion for an Order Unsealing the Lovell Affidavit Will Be Granted in Part and Denied in Part

█ Applying the *Amodeo* test to the Lovell Affidavit, the presumption of access falls closer to the middle of the continuum, and the countervailing factors are less compelling than in the case of the Cited Tapes. Nonetheless, the test still leads to a conclusion that the Subject Paragraphs should remain under seal for the time being. The remainder of the Lovell Affidavit need not be kept confidential, however, for none of the countervailing factors are present, and good cause has not been shown to keep it sealed. Therefore, Plaintiffs will be ordered to file an unsealed version of the Lovell Affidavit, redacted as described below, to supplement the sealed affidavit already filed.

Turning first to the first step in the *Amodeo* test, a somewhat greater, but still not compelling, presumption of access arises than in the case of the Cited Tapes. Like the Cited Tapes, the Lovell Affidavit bears only on the Motion to Compel, not on the merits or the action or their adjudication, and is, therefore, less immediately applicable to the Article III functions of the Court. As in the case of the Cited Tapes, the stage of this litigation further reduces the presumption of access.

It is true that, as a document directly supporting the Motion to Compel, the Lovell Affidavit bears more directly on the Court's functioning than do the Cited Tapes, and that, to some degree, the public's interest in monitoring the Courts will be hindered by maintaining the seal on the Subject Paragraphs. Yet the possibility of later disclosure of the Lovell Affidavit has not been ruled out, and it is possible that, as in *Agent Orange*, subsequent disclosure could be ordered. The public's interest in monitoring the Court's abilities would be nearly as well-served in such an instance.

Turning to the countervailing considerations, the "danger of impairing ... judicial efficiency," *id.*, is nearly as great in the case of the Lovell Affidavit as in the case of the Cited Tapes, and "public access to the materials at issue is likely to impair in a material way the performance of Article III functions." *Id.* (*citing United States v. Valenti*, 987 F.2d 708, 714 (11th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 289, 126 L.Ed.2d 238 (1993)). If parties fear that any discovery or procedural motion may lead to substantial disclosure of materials thought to be covered by the Protective Order, then disclosure of the Subject Paragraphs is likely to hinder future cooperation by the parties and to burden the Court with multiple discovery controversies. *See Amodeo II*, 71 F.3d at 1050.

A second countervailing factor is presented. The Lovell Affidavit quotes selectively from the Tapes, presenting brief snippets of conversations without context. *Amodeo II* noted that "[r]aw, unverified information should not be as readily disclosed as matters that are verified. Similarly, a court may consider whether the nature of the materials is such that there is a fair opportunity for the subject to respond to any accusations contained therein." *Amodeo II*, 71 F.3d at 1051. Here, the conversations are verifiable only in the sense that they are literal transcriptions of conversations. Their actual meaning is made somewhat ambiguous by their presentation in a vacuum. Moreover, in order to respond effectively to the presumptions that could be raised by release of only the Subject Paragraphs—without con-

text—Defendants will be faced with a Hobson's choice: either to attempt to provide context for the Subject Paragraphs by releasing more of the Tapes—thus violating the Protective Order and potentially releasing far more secret information—or to remain silent while the Subject Paragraphs are subject to public scrutiny. This is a level and type of "embarrassment" unjustified by the public interest in disclosure and contemplated by Rule 26(c). The *Amodeo* analysis thus leads to the conclusion that the substantial hindrance to the judicial process and the fallout of disclosing the Subject Paragraphs outweigh the moderate presumption of public access to the Lovell Affidavit.

That conclusion is buttressed by the fact that Defendants have made a showing of good cause sufficient to defeat a motion to modify a protective order. As in the case of the Cited Tapes, the improvidence standard of *Martindell* does not apply. The countervailing factors just discussed suffice to make this showing.

However, the sections of the Lovell Affidavit that are not the Subject Paragraphs carry the same presumption of access as the Subject Paragraphs, but without the countervailing factors. The Plaintiffs will, therefore, be directed to file a redacted copy of the Lovell Affidavit with the clerk of court, omitting only the Subject Paragraphs.

### Conclusion

For the reasons set forth above, Defendants' motion to strike is denied. The L.A. Times's motion to intervene for the purposes of its other motions here is granted. The L.A. Times' motion to require that the Tapes be filed is granted in part and denied in part: specifically, the Cited Tapes—those cassettes containing recordings of the lines cited in the Lovell Affidavit—are to be filed under seal, but the remainder of the Tapes—those cassettes not containing recordings of the lines cited in the Lovell Affidavit—are not to be filed. The L.A. Times' motion to have the Tapes disclosed is denied, with leave granted to renew. The L.A. Times' motion to unseal the Lovell Affidavit is granted in part and denied in part, with leave granted to renew: specifically, Plaintiffs are directed to file without seal a redacted copy of the Lovell

Affidavit, to contain all but the Subject Paragraphs.

It is so ordered.